## WILLIAM A. MARBURG vs. LEWIS MARBURG.

JUDGMENT ON DEBTS CONTRACTED IN A FOREIGN COUNTRY.—A creditor suing here for an amount payable to him in a foreign country in the currency of that country, is entitled to recover in the currency of this country an amount sufficient to produce the sum of the debt where it was made payable, or in other words an amount equal to what he must pay to remit the debt to the place where it was payable; and the amount so recoverable should be computed according to the rate of exchange at the time of the trial or judgment.

——: CODE, ART. 32, SECS. 1 & 3.—The above principle is in no way inconsistent with or affected by sec. 1 of Art. 32 of the Code, recognizing the coinage of the United States as the currency of this State, or by the 3rd sec. of the same Art. requiring all judgments to be entered in dollars and cents.

MERGER OF FOREIGN DEBT BY JUDGMENT.—The specific character of a foreign debt, as such, is lost by the recovery of a judgment upon it here. In such a case the debt merges in the judgment, which presumptively ascertains the liability of the debtor according to the law of the contract, and by the recovery of the judgment it becomes a domestic debt of record, in all respects subject to the law of the forum.

PRACTICE IN COURT OF APPEALS: CODE, ART. 29, SEC. 39.—By the express provisions of the Code, Art. 29, sec. 39, the Court of Appeals of Maryland has no power to reverse a judgment upon the ground that it is entered for a larger sum than is claimed in the declaration.

APPEAL from the Superior Court of Baltimore city.

This action was brought by the appellee against the appellant to recover the value of goods sold and delivered by the former to the latter.

1st *Exception.* At the trial of the cause an account showing the amount due from the appellant to the appellee was offered in evidence by the latter and was admitted to be correct. The appellee further proved by a competent witness, that he resided in Frankfort on the Main, and that the monies shewn to be due by said account were, by agreement between the parties, always payable to the appellee in florins, at Frankfort aforesaid; and that for the purpose of such payments remittances were always made to him by bills of exchange on Europe, which were received and sold by him and the nett proceeds thereof, at Frankfort, credited in the appellant's account. The appellee also proved by a competent witness, that at the time of the trial the

rate of exchange for bills on Europe, proper to remit to Frankfort, was eighty-eight cents per florin in currency, and that by "currency" was understood legal tender notes ; and upon cross-examination the witness also proved, that if bills were purchased and paid for in gold the rate of exchange would vary very little, if at all, from the legal par of a florin, which is forty cents. The witness further stated that it then required two hundred and twenty-one dollars in currency to buy one hundred in gold ; that the florin was a silver coin used in circulation at Frankfort; and that transactions in exchange were then usually carried on in currency.

The appellee offered the following prayer : "If the jury find from the evidence that the plaintiff resides in Frankfort on the Main, in Europe, and shall further find that the indebtedness shewn to be due him by the defendant by the bill of particulars, and admitted by the defendant, was payable in florins at Frankfort aforesaid, then the jury ought to give to the plaintiff by their verdict, such sum as will at this time, according to the current rates of exchange, pay the said indebtedness in florins at Frankfort aforesaid."

The defendant prayed the Court to instruct the jury as follows, viz :

"The defendant denies that the money demanded of him by the plaintiff was payable in Frankfort on the Main. But if the jury shall find said money was payable in Frankfort, as contended for on the part of the plaintiff, he will insist that the sum ascertained · by the jury to be due on account in florins, is to be converted into current gold or silver money of the United States, after the rate of forty cents per florin, and as there is no evidence that the rate of exchange at the time said money was payable, was against the city of Baltimore and in favor of Frankfort,

nothing is to be allowed in damages for the non-payment of balance due in Frankfort."

"The defendant objects to the admissibility of the evidence offered in regard to the rate of exchange, where a bill on Frankfort is proposed to be purchased in depreciated paper money."

The defendant also prayed the Court to instruct the jury, "That in estimating the damages to be allowed to the plaintiff, they should ascertain what sum in gold or silver current money of the United States would, at this time, after the current rate of exchange in the purchase of exchange with gold or silver money of the United States, pay to the said plaintiff, at Frankfort, the sum in florins which the jury shall find due from defendant to the plaintiff, and that their verdict ought to be for such sum of money."

The foregoing prayers of the defendant having been rejected, he then prayed the Court to instruct the jury :— "That if, in making up their verdict, they shall convert the sum in florins, due to the plaintiff from the defendant, into paper money issued by the United States, and usually termed *greenbacks*, or legal tender paper, and allow to the plaintiff such sum of paper money as at the present rate of exchange will purchase a good bill of exchange on Frankfort, for the amount in florins so ascertained to be due from the defendant to the plaintiff, then they shall render their verdict specifically for the said sum of money, payable in said description of paper money."

The Court below, (MARTIN, J.,) granted the prayer of the plaintiff and rejected the prayers of the defendant, and also overruled his objection to the admissibility of evidence, to which rulings the defendant excepted.

2nd *Exception.*—The jury, after retiring, came into Court and found a verdict for the plaintiff for "$28,546.23 in currency," and the Court declined to receive said verdict and instructed the jury that their verdict should be for

so many dollars and cents, and the jury then found a verdict in dollars and cents simply. The defendant then excepted to the rejection of the first verdict and the instruction given by the Court.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Thomas S. Alexander* for the appellant.

The appellant insists there is error in the judgment of the Court below for the following reasons :

1. The Code XXXII. adopts as the currency of the State the coins of the United States at their nominal values as regulated and established by Congress ; and by sec. 3 all judgments are to be rendered in dollars and cents. The debt due from the defendant to the plaintiff in florins is therefore to be converted into dollars and cents according to the par of exchange established by Congress, that is to say, after the rate of forty cents per florin ascertained to be due as aforesaid.

The provision in the Code is copied from the Act of 1781, ch. 16, to declare what foreign gold and silver coin shall be deemed the current money of the State. Sterling money is made convertible into current money at the rate of one hundred and sixty-six pounds, thirteen shillings and four pence, current money, for one hundred pounds sterling, and therefore, in 4 *H. & McH.*, 199, *Purviance vs. Neave*, it was adjudged that judgment might be entered for sterling money although the Act had expressly declared that all judgments shall only be rendered in current money at the rate and value aforesaid. Hence, it is apparent that the verdict and judgment in the present order might have been rendered in florins, the rate of commutation being fixed by law.

2. The case above referred to shows that no allowance ought to be made for any difference existing between the

par and the actual rate of exchange as an equivalent for the cost of transferring money due from this country to the country where it is payable, and it is believed the same conclusion will be corroborated by an inspection of the records of our Courts; and our rule is in this respect consistent with that which prevails in New York, as is shown by *Martin vs. Franklin*, 4 *Johns.*, 124, *Schofield vs. Day*, 20 *Johns.*, 102. And in Massachusetts as is shown by *Adams vs Cordis*, 8 *Pick.*, 260. *Alcock vs. Hopkins*, 6 *Cush.*, 484. *Lodge vs. Spooner*, 8 *Gray*, 166. *Duvall vs. Farmers Bank of Maryland*, 9 *G. & J.*, 41. In which last case it was held that where the contract is made for payment of so many dollars, without more, it is to be understood that the party is to pay dollars of account of the United States as regulated and fixed by Congress.

In *Story's Confl. of Laws, secs.* 308–9, it is conceded that such should be the rule where the par is established by law, and that Lord Eldon was of that opinion in *Cockerell vs. Barber*, 16 *Ves.*, 461.

3. But if any allowance is to be made for the difference between the par and the actual rate of exchange, between the country where payment is demanded and the country where payment ought to have been made, such allowance is to be adjusted according to the rate of exchange current at the time of the default made in payment, agreeably to the terms of the contract. The defendant is under no obligation to transfer, and consequently under no obligation to pay, the charge for transferring to Frankfort the money which may be recovered against him at Baltimore. In an action against the vendor for not returning goods sold, or against the vendee for not accepting goods purchased, the measure of damages is the difference between the contract price and the current value of the goods at the time and place appointed for delivery or acceptance. *Williams vs. Wood*, 16 *Md. Rep.*, 258. *Williamson vs. Dillon*, 1 *H. & G.*, 445.

No respect whatever is paid to the current value of the goods at the time of trial. Nor is anything allowed for the difference in exchange, between the place where payment is to be made and the place where suit is brought; there is no difference in principle between such cases and the case of an action brought for default in payment of the prices for goods sold and delivered at the time and place appointed for payment. If in any case the difference between the par and actual exchange becomes an element in the assessment of damages, the estimate must be according to the current rate prevailing at the time of the default made, and not at the time of trial.

4. The more important error is in the conversion of the metallic florin into its equivalent of paper money issued under authority of Congress. This paper is not current money of the United States. It is not an equivalent in all cases for current money. It was issued in payment of certain description of debts due by the United States, and is made a tender in payment of other descriptions of debts due to the United States, and of debts treated as domestic debts in contradistinction to foreign debts. Now it is claimed that the debt due by the defendant to the plaintiff is a foreign debt, and that the plaintiff is not bound to accept paper money in payment thereof. But the judgment recovered to enforce payment of the debt must partake of the original character of the debt, and upon the hypothesis of the plaintiff is only to be satisfied by a payment in gold or silver coin.

With what color of justice can a party insist on commuting into paper his debt, which is payable in coin, who denies his obligation to receive payment of his debt in paper money? And where is the law which establishes the supposed disparity in value between the metallic currency and paper issued by authority of Congress? And where the law which compels the debtor to pay his debt in

paper either at par or according to any scale of depreciation whatever? The privilege of making payment in paper is personal to the debtor. It extends to certain class of debts only. It is limited in its discretion. It may be withdrawn at the pleasure of Congress, and on its withdrawal the debt, whether evidenced by open account or bond, or judgment, will become payable in metallic currency alone. The conclusion therefore is, that every contract for payment of money, unless it is specially stipulated to the contrary, must be understood to be a contract for payment of so much of current money of account of the United States. *Lodge vs. Spooner*, 8 *Gray*, 166. And judgment, in the event of a suit brought to enforce that contract, must be rendered for a certain sum in current money, and payment or satisfaction of that judgment must be made in current money, unless at the time of payment the law shall authorize a tender of payment in another medium. If, then, the judgment in this case had been rendered in current money of the United States for such sum as would be equivalent at par, or after the rate of exchange prevailing at the time of breach of contract, for the number of florins due from defendant to the plaintiff, and with interest thereon from the time of breach, as damages for the detention of the debt, perfect justice would be done to the plaintiff, since he might, on his theory, insist on payment being made to him in coin of the United States, or in foreign coins made current by Act of Congress, and at their established values. On the other hand, the grossest wrong will be perpetrated against the defendant if the present judgment is allowed to stand. Upon the theory of the plaintiff, that his debt was a foreign debt, he may insist on payment of his judgment in gold or silver, and as the commutation was effected at the rate of two hundred and twenty-one in currency for one hundred in gold, he will, in the event of an affirmance of the judgment, realize more than double of the sum really due to him.

The same result would follow from a repeal of the tender laws before the actual payment of the judgment.

And at the present moment, and assuming that the judgment may be satisfied by payment in paper at its par value, the plaintiff would realize by such payment an equivalent for upwards of $20,000 in satisfaction of his demand, which was somewhat over $12,000; gold having fallen from 2.21 at the time of the trial, to 1.37 at the present moment.

5. The conclusion from the foregoing positions is: that the Court erred in refusing the prayer tendered by the defendant; in granting the instruction asked for by the plaintiff; in rejecting the first verdict returned by the jury; and in entering the judgment simply for so much money.

If it was competent for the jury to commute the debt, payable in gold, into paper at a depreciation, it was eminently proper that they should say that the damages had been assessed in paper at a depreciation, and the verdict having been so rendered, the defendant was aggrieved by the rejection of that verdict. The only conceivable reason for rejecting the first verdict is, that the law recognizes no such money as paper currency, and that no valid judgment could have been entered on such verdict. The inconsistency in the rulings of the Court may therefore be thus summed up: The jury were directed to assess damages against the defendant by a process of exaggeration, of which it was declared the law would tolerate no foot-print in its judgment.

The records of the General Court show many actions where the damages claimed were pounds sterling, the declarations following the case of *Barn. and Adol.* In no case has there been any other rule but to allow £100 to $166, or £1 to $4.44.

*I. Nevett Steele* for the appellee.

1. It will be contended for the appellee, that his prayer was properly granted by the Court below. That prayer asserts the proposition of law that in an action to recover for the breach of an agreement to pay a certain sum in foreign money, at a designated place in a foreign country, the verdict should be for such an amount as would produce or place the sum due at the point where the plaintiff is entitled to have and receive it. Upon principle this proposition is manifestly right. The law, in awarding damages for breach of contract, ordinarily seeks to give the plaintiff indemnity, and nothing more or less. Any other rule than that adopted by the Court below must, in all cases where the rate of exchange between the country in which the suit is brought and that where the money is payable is not precisely at the legal or nominal par, give less or more than an indemnity to the plaintiff, and thus do wrong to him or to the defendant, according as the rate of exchange is against or in favor of the country where the suit is depending. To hold that the plaintiffs, in such cases, are to recover the precise sums due, according to the legal par of the foreign money, and without reference to the rate of exchange, would be to strike out of the contracts the agreement to pay the money abroad, and treat them as if they were ordinary domestic debts.

While there is some conflict in the cases on this subject, it is believed that the rule laid down in this prayer is sustained by the decided weight of authority. *Cash vs. Kennion,* 11 *Vesey,* 314, 318. *Atkinson vs. Braybrook,* 4 *Campbell,* 380. *Scott vs. Beavan,* 2 *Barn. & Adol.,* 78, 85; (22 *Eng. C. L. Rep.*) *Grant vs. Healey,* 3 *Sumner,* 523. *Lee vs. Wilcocks,* 5 *Serg. & Rawle,* 48. *Delegal vs. Naylor,* 7 *Bing.,* 460, (20 *E. C. L.,* 208.) *Lanusse vs. Barker,* 3 *Wheaton,* 101, 147. *Woodhull vs. Wagner,* 1 *Baldwin,* 296, 302. *Smith vs. Shaw's Adm'r,* 2 *Wash.*

*Crt. Ct. Rep.*, 167, 168. 3 *Kent's Com.*, 117. *Pars. on Bills and Notes*, 369, 367, *Code*, *Art.* 31—same as *Act of 1785. Bryden vs. Taylor,* 9 *H. & J.*, 396.

2. The first prayer of the appellant, which besides requiring the jury to convert the florins into gold and silver money of the United States, asserts the proposition that the rate of exchange at the time when the money was payable, was the true measure of damages, is in direct opposition to the prayer of the appellee just examined under the first point. If the law of the first point is correct, then this prayer of the appellant was properly rejected. The objection to that part of this prayer, which required the jury to give by their verdict only the gold value of the florins, will be considered under the next point.

3. The appellant's objection to the admissibility of evidence, and his second prayer, may properly be considered together, as they both present the proposition that the jury were to look exclusively to the gold value of florins and the gold price of exchange, in making up their verdict. The objection to this proposition is, that it would require the amount of the verdict to be ascertained in one kind of money, while the verdict would be payable in another; and this objection, it is believed, cannot be successfully answered. It is matter of public history, and is also shown by the evidence in this cause, that at the time of the trial below gold had become an article of merchandize, and had ceased to circulate as money; it was bought and sold, not only by the public, but by the Government itself; laws were passed by Congress regulating contracts for its purchase and sale; all values and prices throughout the country were ascertained and fixed in currency, and the whole business of the country was conducted with paper as the circulating medium. The law authorized payment of the verdict in this depreciated legal tender paper, and in the condition of things existing at the time of the trial, a ver-

dict for the gold value of the florins, instead of paying the plaintiff's debt at Frankfort, would have paid very little more than a third of it. This would clearly have been unjust. While this second prayer of the appellant conceded the law that the plaintiff ought to have such a sum as will purchase a good bill on Frankfort for the amount of his debt, it prevented him from getting such sum by having the damages ascertained in a kind of money in which the verdict would not be paid to him. By assessing the damages according to the rate of exchange in currency, the appellee would get precisely the sum which would pay his debt in Frankfort, according to contract, and nothing more. He would not gain a dollar.

The prayer of the appellant sought to have damages assessed according to a money standard, which had no practical existence in the country at the time of trial, and this with the object that the verdict should afterwards be paid, (if paid at all,) according to a much lower money standard. The prayer carefully abstained from making the verdict payable in gold, which was the only thing, (if it could have been done legally,) which would have made the prayer correct. *Act of Congress, Feb.*, 1862, sec. 4. 12 *Statutes at Large*, 345.

4. The third prayer of the appellant was properly rejected, and the jury were properly directed to find their verdict in "dollars and cents," and not in "currency" or in any particular "description of paper money."

The Court had no power to have the verdict given in any thing else than dollars and cents. The law directed in what it should be paid, and as the law gave the appellant the right to pay the verdict in the particular "description of paper money," referred to in the prayer, and which the jury meant by the word "currency," the appellant was not injured by the action of the Court below, in rejecting his prayer and refusing to receive the verdict of the jury as originally found.

COCHRAN, J., delivered the opinion of this Court.

This suit was brought by the appellee to recover a balance due for goods sold to the appellant at Frankfort on the Main. The debt stated in the bill of particulars to be 26,317.44 florins is admitted, and it appears that this sum, by an agreement between the parties, was to be paid to the appellee in florins, at Frankfort, the place of his residence.

All the important questions presented by the exceptions relate to the rule for ascertaining the amount recoverable in the money or currency of this country, in satisfaction of the debt payable at Frankfort, and for the purpose of disposing of them as a whole, without regard to their order, we propose to consider and determine the general character and operation of the rule for ascertaining the extent of the creditor's remedy in that class of cases.

This subject has been discussed in America as well as in the English Courts, and the same doctrines, as we think, have been finally settled in both. In *Cash vs. Kennion*, 11 *Ves.*, 314, where a debt contracted in Jamaica was made payable in London, Lord ELDON held that the debtor was bound to pay the expense of remitting the money; "that if a debtor agrees to pay £100 in London on a given day, he ought to have that sum there on that day. If he fails in that contract, wherever the creditor sues him, the law of that country ought to give him just as much as he would have had if the contract had been executed."

This rule was adopted in *Delegal vs. Naylor*, 20 *Eng. C. L. Rep.*, 199, and also in *Scott vs. Bevan*, 22 *Eng. C. L. Rep.* 28. The best considered of the American cases are in strict accordance with these authorities. STORY, J., in *Grant vs. Healy*, 3 *Sum.*, 523, said, "that whenever a debt made payable in one country is sued for in another country, the creditor is entitled to receive the full sum necessary to replace the money in the country where it ought to have been paid, with interest for the delay, for then, and then

only, is he fully indemnified for the violation of the con-tract. In every such case the plaintiff is, therefore, enti-tled to have the debt due to him first ascertained at the par of exchange between the two countries, and then to have the rate of exchange between those countries added to or subtracted from the amount, as the case may require,. in order to replace the money in the country where it ought to be paid." This doctrine he propounds as one founded on principles of reciprocal justice. In the case of *Lee vs. Wilcocks*, 5 *Serg. & Rawle*, 48, the Court declares the set-tled rule to be, "where foreign money is the object of the suit, to fix the value according to the rate of exchange at the time of trial;" and the same rule was applied in *Smith vs. Shaw*, 2 *Wash.*, 167.

The New York and Massachusetts cases, referred to by the appellant in support of a computation based upon the par of exchange, were reviewed in *Grant & Healy*, and were rejected as authorities on that point. The best con-sidered cases bearing on this question are collated in 3 *Kent's Com.*, 317, *note*, and in 2 *Par. Notes & Bills*, 370, and the rule deduced from them is, that a creditor suing here for an amount payable to him in a foreign country, in the currency of that country, is entitled to recover an amount sufficient to produce the sum of the debt where it was made payable; or, in other words, an amount equal to what he must pay to remit the debt to the place where it was pay-able. It will also be seen from the authorities referred to, that the amount recoverable should be computed according to the rate of exchange at the time of the trial or judgment. This principle in both particulars must, in our opinion, be applied to the present case, and we hold, accordingly, that the appellant was entitled to a judgment for an amount which, at the time of trial, would have enabled him to realize the amount of his debt in florins, at Frankfort.

Assuming this standard or measure of his claim in the money or currency of this country to be the true one, we

do not find that it is in any way affected by the 1st sec. of Art. 32 of the Code, recognizing the coinage of the United States as the currency of this State, or by the 3rd sec. of the same Art., requiring all judgments to be entered in dollars and cents. The appellant was entitled to a judgment for an amount that would pay his debt at Frankfort, and in that particular the judgment recovered appears to have been entered in conformity with the requirements of the Code. Both of these provisions were taken from the Act of 1812, ch. 135, and the Court was not at liberty to disregard them and enter the judgment for money in other denominations than those prescribed.

The suggestion of the appellant that this is a foreign debt, and that the judgment recovered upon it shall partake of the original character of the debt and be payable only in gold or silver coin, is not consistent with the facts in the case, nor with the principles upon which we have said the judgment was recoverable. It proceeds on the theory that the recovery here of a judgment on a foreign debt, as distinguished from a debt originated and made payable in this country, does not bring the debt so recovered within the legal operation and effect of the Acts of Congress authorizing the issue of notes of the United States as lawful money, and making them a legal tender for all debts within the United States, except for duties on imports and interest on the public debt. According to the ordinary rules of legal reasoning, the specific character of a foreign debt, as such, is lost by the recovery of a judgment upon it here. In such a case the debt merges in the judgment, which presumptively ascertains the liability of the debtor according to the law of the contract, and by the recovery of the judgment it becomes a domestic debt of record, in all respects subject to the law of the forum.

The consistency of these Congressional Acts with the Constitution of the United States was conceded by the counsel of the respective parties, and assuming them to be

Marburg vs. Marburg.

free from objections on that ground, as under the circum-
stances we are required to do, it follows that the appellant
was at liberty to satisfy any judgment obtained against
himself, by payment made in the currency authorized by
those Acts.  Treating the judgment, therefore, as one that
the appellee could not compel the appellant to pay in coin,
and as one that the appellant could satisfy in currency, it
is evident, in view of the principles upon which we have
said that the judgment was recoverable, that it should
have been entered for an amount which, subject to the
appellant's privilege of paying in currency, would then
have been sufficient to enable the appellee to realize his
debt in florins at Frankfort.  By no other method known
to our practice could the full recoverable amount of his
claim have been ascertained and adjudged to him ; he was
therefore at liberty to show, by competent evidence, the
ruling rate at which exchange in the paper currency of the
United States could then be effected.  The suggestion that
the judgment is erroneous because it is entered for a larger
amount than was claimed in the declaration, cannot affect
the disposition of the case on this appeal.  Under sec. 39,
Art. 29, of the Code, this Court has no power to reverse a
judgment upon that ground.  It is there expressly declared,
that "no judgment shall be reversed in the Court of Appeals
because the verdict was rendered for a larger sum than the
amount laid in the declaration."

It will be seen from this expression of our views on the
whole case, that none of the exceptions taken by the appel-
lant to the rulings of the Court below can be sustained.

*Judgment affirmed.*