FREDERICK NICKERSON & others *vs.* SAMUEL SOESMAN & others

If a factor agrees to receive consignments of merchandise, make sales thereof, collect the proceeds, hold them, whether in the shape of money or evidences of debts, as property of his principal, and deliver them up to him on demand at the termination of the agency, his duty so to deliver them up is not affected by his further agreement to guarantee such debts if not paid by the debtors within a fixed time; although at the date of the demand such time has not expired.

In an action here by a principal against his factor in a foreign country for the defendant's breach of contract in refusing to deliver up there certain moneys and evidences of debt, the measure of damages is such sum in the currency of the United States as most nearly approximates to that which the plaintiff would be entitled to recover in such foreign country.

CONTRACT. Writ dated April 28, 1865. The material part of the agreed facts was as follows : Since March 9, 1860, the plaintiffs have been merchants at Boston under the firm of F. Nickerson & Co.; the defendants merchants at Paramaribo in Surinam under the firm of Soesman Brothers. On that date they entered into written articles, under seal, in which it was recited that, as the plaintiffs proposed to put one or more vessels into the trade between the United States and Surinam, the defendants should " receive the consignments of all vessels and cargoes that the said F. Nickerson & Co. may consign to them within the term of five years from this date, make sales and collect proceeds of said cargoes, purchase produce for homeward cargoes, and do all else that may be required or necessary as consignees to further the interest of the owners of said vessels and cargoes ; " that " one fourth part of the net profits estimated as resulting from the year's business shall be considered as belonging to said Soesman Brothers in lieu of the customary charges of commission " and " in full compensation for their services attending to the business in Surinam," " all parts of cargoes that may be on hand in Surinam on the 31st of December to be valued at cost in Boston and thirteen per cent., and all good outstanding debts due to these voyages in Surinam to be valued at thirty-eight cents, United States currency, per guilder; " and that " in all matters pertaining to the business " the consignees should " be governed by any and all instructions that

Nickerson & others *v.* Soesman & others.

may be given them by said F. Nickerson & Co. or authorized
agent;" and it was further provided that " F. Nickerson & Co,
shall have the right to withdraw, at any time, their vessel or
vessels engaged in the trade, and close up the business, or they
may change the agency in Surinam; and the said Soesman
Brothers hereby agree to deliver to said F. Nickerson & Co., or
to their order, on demand, everything then in the hands of said
Soesman Brothers belonging to said F. Nickerson & Co., in-
cluding all merchandise, all money received for sales of mer-
chandise, and all accounts and notes or goods and other written
evidences of debts, with power to collect the same." In respect
to the term " goods " in the last clause quoted it was agreed by
the parties that, as used in the contract in connection with notes
and evidences of debt, it denoted at Surinam a species of obli-
gation of the nature of a due bill or memorandum of debt.
Under this contract the plaintiffs made large shipments of mer-
chandise to the defendants, which they received and sold; and
the profits were divided pursuant to the stipulation concerning
the same.

In 1862, during the progress of the business, a correspondence
ensued between the parties on the subject of guaranteeing out-
standing debts resulting and to result from it, which concluded
substantially as follows: On April 16, 1862, the plaintiffs wrote
that they would pay " for guaranty of all debts not collected on
sales up to 25th of January last the lump sum of 1000 guilders,"
and " on sales from that date one per cent., all sales not collected
to be considered due within six months from date of sale ; " to
which, on June 15, 1862, the defendants answered: " In order to
finish the matter, we'll accept the proposed 1000 guilders, and
charge one per cent. as guaranty for all sales after January 25,
1862. We, however, cannot penetrate your meaning proposing
all sales not collected six months after date to be considered
due," and added some remarks about the necessity of giving
'ong credits in order in the course of trade in Surinam to effect
any considerable amount of sales; and on July 12, 1862, the
plaintiffs replied : " In regard to guaranty of sales, we intended
to be understood that, as far as we are concerned, all debts at

Surinam are to be considered as collected within six months after sales are made, any debt six months old to be considered as yours, you accounting to the concern for the amount of it. We note what you say about the difficulty of collecting some debts within that time; but unless you will take and account for the debts when six months old we do not want you to sell to parties who will not pay up within that time. We are content to pay the one per cent. guaranty, but want a reasonable time fixed when the debts shall be considered as paid up, and due from you to the concern."

Early in 1865 the plaintiffs determined to withdraw from and close the business under their contract with the defendants; and did so; and gave notice thereof to the defendants; and sent William A. Herrick to Surinam as their agent; " and directed the defendants, by letter, to deliver to said Herrick everything then in their hands belonging to said plaintiffs, including all merchandise, money received for sales of merchandise, and all accounts, notes or goods, and other written evidences of debts." On February 28, at Paramaribo, Herrick made written demand on the defendants for the delivery to him as the authorized agent of the plaintiffs, of " everything belonging to said F. Nickerson & Co., including all merchandise, moneys received for sales of merchandise, and all accounts and notes or goods and other written evidences of debts, with power to collect the same," to which demand the defendants, on March 1, replied : " We have the pleasure to say that merchandises on hand belonging to our concern with Messrs. F. Nickerson & Co. of Boston will be delivered to you immediately. Balances of account current forwarded by us to said gentlemen will be settled agreeable to tenor of Messrs. F. Nickerson & Co.'s letter dated July 12, 1862, by our firm in Boston when due." It was agreed that at the time of this demand the defendants had no money in their hands. On March 11 they delivered to Herrick all the merchandise which was in their hands; but they refused to deliver to him any accounts, notes or goods, or other evidences of debt, which they then had in their hands for sales of merchandise under the contract, and paid him no money, insisting that, under the contract,

between them, nothing was due, unless collected, until six months after sales, and that they had a right to retain the notes, goods and accounts, and to pay the plaintiffs the amount thereof when collected, or at maturity, in guilders, estimated at thirty-eight cents each, in currency of the United States, at Boston.

In 1865, the goods sent from Boston to Surinam were scld there at prices very much less in the currency of that country than they cost in Boston in the currency of the United States; and the goods bought in Surinam and sent to Boston brought very much higher prices in Boston in currency of the United States than they cost in Surinam in the currency of Surinam; in other words, the rate of exchange between the United States and Surinam was very greatly in favor of Surinam; and these moneys, accounts, notes, or goods, or other evidences of debt, delivered or paid there in the currency of that country, would have been of much greater value than in Boston in the currency of the United States. When the contract was terminated and demand made, the market rate of exchange in Boston on Surinam was about fifty per cent. above par, if paid in currency; but such exchange could be purchased for gold for about par.

The guilder is a silver coin current in Surinam equal in value to four tenths of a dollar of the United States. At the time of the filing of this statement of agreed facts the defendants admitted a balance to be due from them to the plaintiffs, under the contract and alleged subsequent agreement *to guarantee,* of twenty-two thousand four hundred and fifty-eight guilders, but not under the original contract only; and they paid to the plaintiffs an amount in currency of the United States, equal to that number of guilders computed at the rate of thirty-eight cents each in said currency, which payment it was agreed should have the same effect as if the amount had been paid into court.

But the plaintiffs contended that a much larger sum than this was due to tnem; and " that they had, under the contract and the facts, a right to have delivered to them in Surinam, upon their termination of the business, and notice and demand, all the money received by the defendants for sales of merchandise, and all notes or goods or other evidences of debt received therefor by

them; and, if the same were not collected of the debtors within six months of their date, to be paid the amount thereof in Surinam by said defendants; or, if paid in Boston, to have added the rate of exchange in currency, or all such damages as would arise from the nonpayment in Surinam."

Upon the foregoing facts, it was submitted to the full court " to determine the true construction of the contract, and the relation and rights of the parties respectively, and the mode by which the amount which the plaintiffs are entitled to recover for each guilder, and generally, is to be ascertained;" and, upon such decision, it was agreed that the case might be sent to an assessor, to determine the amount, if any, which the plaintiffs were entitled to recover.

*C. T. Russell*, for the plaintiffs.

*G. O. Shattuck*, for the defendants.

BIGELOW, C. J.   It is not disputed on the part of the defendants, that, under the contract of March 9, 1860, they became the agents of the plaintiffs in Surinam to receive consignments of cargoes of merchandise, to make sales thereof, to collect the proceeds, and therewith to purchase return cargoes, and to hold any residue in their hands in the shape of goods, accounts, notes and other evidences of debt, as the property of the plaintiffs, and on the termination of the agency to deliver the same on demand to the plaintiffs or to their order.   Nor is it open to question that as between the parties the legal effect of this relation was, that the title to all the property, notes, accounts and other evidences of debt which were in the hands of the defendants, including money which they had received for sales of property consigned to them under the contract, was in the plaintiffs, who had a right to resume and take possession thereof when the contract of agency was terminated.   Story on Agency, §§ 229, 231, and cases cited. Indeed, this was the express stipulation of the parties in that clause of the contract by which it was provided that, on the cessation of the agency, which the plaintiffs had a right to terminate at their pleasure, the defendants should deliver to the plaintiffs on demand, or to their order, " everything then in their hands, including all merchandise, all money received for

sales, and all accounts and notes, goods and other written evidences of debts." We do not see that there is any valid reason for the position taken in behalf of the defendants, that this stipulation was annulled or changed, or the legal relations of the parties in any respect varied or affected, by the agreement subsequently entered into by letters interchanged between the parties on the subject of the guaranty of the debts contracted by the defendants for sales of merchandise consigned to them. Giving full effect to this agreement, it did not operate to transfer the title to the property or to the proceeds of it in the hands of the defendants to them so that the plaintiffs could not reclaim and resume possession thereof at any time. The agreement of guaranty is to be construed with reference to the previously existing contract of agency. It did not supersede that contract or change the relations of the parties from that of principals and agents to that of debtors and creditors. The real effect of the agreement of guaranty was to superadd to the liability to the plaintiffs of the original purchasers of their property from the defendants the promise of the latter to be responsible for the payment of the price, if not paid by the purchasers within a fixed period of time. There is nothing in the agreed statement of facts from which it appears that, at the time of the demand on the defendants at Surinam, this period of time had elapsed after any one of the debts then due for merchandise of the plaintiffs had been contracted. But it is quite immaterial whether this was so or not. The original debt was to the plaintiffs, and it continued to be due to them, and the notes, accounts and other evidences of debt still belonged to the plaintiffs, in like manner as if no agreement of guaranty had been entered into, and irrespectively of the fact that the liability of the defendants on their guaranty had become absolute. Story on Agency, §§ 33, 215. *Morris* v. *Cleasby*, 4 M. & S. 574. The plaintiffs did not agree to give up their claim against the vendees of their property. They still retained the right to seek their remedy against them on the original indebtment. By the contract of guaranty they acquired the additional security of the promise of the defendants to pay the debts if the original debtors did **not**

pay them before the expiration of the stipulated period. It fol lows from this view of the relations and rights of the parties, that the defendants are liable in this action for their refusal to surrender the notes, goods, accounts and other evidences of debt, which were in their hands at the time of the demand on them in Surinam by the plaintiffs' agent in February 1865.

The question then arises as to the measure of damages. It is to be borne in mind that this is not a suit on a debt for a sum of money, but is an action brought to recover damages for the breach of duty and of contract by the defendants as agents towards the plaintiffs as principals. The question is, not what sum shall the plaintiffs recover for a sum of money due and owing as a debt by the defendants, but what sum will indemnify the former for the neglect and omission of the latter to regard their instructions and fulfil their duty under a contract of agency. The general rule on this point is perfectly well settled. The agent is bound to make full indemnity to his principal for all loss or injury caused by his neglect, misconduct or other violation of duty. Story on Agency, §§ 217–220. *Suydam v. Jenkins*, 3 Sandf. 614. According to this rule, for the refusal of the defendants to surrender to the plaintiffs' agent the money, notes, goods and evidences of debt, on demand duly made therefor in Surinam, the plaintiffs have a right to recover a full indemnity. They had a right to demand and receive them then and there; and for the failure of the defendants to fulfil their duty they are entitled to such sum as will put them in the same situation as they would have been in if the property had been then given up and received by them at Surinam. Clearly such indemnity would not be had, if the plaintiffs could recover only such sum in the currency of this country as is nominally equivalent to the sum which they would have been entitled to recover in the currency of Surinam. It would fall just so far short of full compensation for the injury sustained as that sum in the current money of the United States is worth less than the same sum estimated in the currency of Surinam. The only just rule is, that in such cases the party who has suffered a loss or injury through the fault of another shall be allowed such sum

in the currency of the place where a suit is brought as most nearly approximates to that which he would be entitled to recover in the country where the injury or loss happened and the damage was sustained. The cases in which actions have been brought on a contract to pay a certain sum of money in a foreign country depend on different principles and are not applicable to transactions like that out of which the present action has arisen.

The damages are to be computed according to the principle above stated, and, for the purpose of ascertaining them, in compliance with the agreement of the parties the order is

*Case referred to an assessor.*