Stringer *v.* Coombs.

---

EDMUND P. STRINGER and others *vs.* ROBERT H. COOMBS.

*Damages. Execution. R. S., c. 81, § 1. Writ.*

The defendant agreed to pay the plaintiffs a commission of five per cent. on the charter of a vessel hired for thirty-three thousand three hundred dollars in hard Spanish dollars, i. e., $1665 ; *held* that, Spanish dollars being equivalent to ours, the brokerage should be paid in the coin of the United States with interest from the day it was payable ; and that execution should issue specifically for the coin.

An execution is a writ the form of which the justices of this court are authorized to change as occasion may require, under R. S., c. 81, § 1.

ON FACTS AGREED, presented under R. S., c. 77, § 14.

The plaintiffs, at London, Eng., procured the defendant's vessel to be chartered for a round voyage at $33,300 to be paid in hard Spanish dollars, for which it is conceded that they are entitled to a commission of five per cent. on that amount, the only question being whether this $1665 should be paid in currency or in hard Spanish dollars, or their equivalent.

*Boyle & Johnson,* for the plaintiffs.

*Wm. G. Crosby,* for the defendant, cited *Adams v. Cordis,* 8 Pick., 260 ; *Lodge v. Spooner,* 8 Gray, 166.

APPLETON, C. J. The plaintiffs procured a charter-party on the Live Oak, a vessel of which the defendant was master and part owner. The vessel at the time was lying in the port of Cardiff. The defendant executed and delivered the plaintiffs on the 15th of April, 1866, the following agreement:

"London, 15 April, 1866.

Messrs. Stringer, Pembroke & Co.,

      8 Austin Friars, London.

          Gentlemen :

In consideration of your having procured a charter for the ship "Live Oak" from the Chincha Islands to Spain, hereby undertake to pay you a brokerage of five per cent. on the estimated amount of chartered freight—ship lost or not lost ; such brokerage being due on the signing of the charter-party, but if not then paid, may under your order be deducted by the consignee from the freight upon settlement.

          Gentlemen, yours respectfully,

                R. H. COOMBS."

By the charter-party the freight was to be paid at the rate of eighteen hard Spanish dollars per ton of 2240 lbs. English, &c.

The English currency is in pounds, shillings and pence. The amount due was to be ascertained by reference to the value of hard Spanish dollars. Neither German, Mexican or American dollars can be referred to as the measure of value. They may differ in value from the hard Spanish dollar, which was agreed upon and which alone would satisfy the terms of the charter.

The contract was made in London and the parties must be governed by the law of the place. The plaintiffs were there entitled to five per cent. of the freight computed at the rate specified in the charter-party. Their claim could only be satisfied by the payment of one-twentieth of the freight reckoned according to the terms of the charter and payable in London. If the debt is paid here, the plaintiffs should receive what their five per cent. was worth at the time when, and the place where, it was payable, in the currency of this country and interest. Nothing less would be just

or would be a full compensation. In the case of a debt contract-
ed in England in the absence of any understanding to the con-
trary, the debt is held due and payable there. "This being so,"
observes Thompson, C. J., in *Benners v. Clemens,* 58 Penn., 24, "it
was payable in the legal currency of the country denominated
pounds, shillings and pence, and the representative of gold. Of
course, as any payment here would be in legal tender notes, the
value of the gold in legal tenders with interest would be what in
amount the judgment should be. The *lex loci contractus* must
control in interpreting the contract. *Allshouse v. Ramsey,* 6
Wharton, 331; *Watson v. Brewer,* 1 Barr, 58." These views
were fully sustained by Mr. Justice Cochrane in *Marburg v. Mar-
burg,* 26 Maryland, 8, where this question is very fully and ably
discussed. In *Nickerson v. Soesman,* 98 Mass., 364, the suit was
brought to recover damages for the non-performance of a con-
tract to be performed in a foreign jurisdiction. In that case, the
defendants refused to surrender to the plaintiffs' agent money, notes
and goods, &c., in Surinam, on demand, as by their contract they
were bound to do. In reference to the rule of damages, Bigelow,
C. J., says : "They had a right to demand and receive them then
and there ; and for the failure of the defendants to fulfill their
duty, they are entitled to such sum as will put them in the same
situation as they would have been, if the property had been then
given up and received by them at Surinam. Clearly such indem-
nity would not be had, if the plaintiffs could recover only such sum
in the currency of this country as is nominally equivalent to the
sum which they would have been entitled to recover in the cur-
rency of Surinam. It would fall just so far short of full compen-
sation for the injury sustained, as that sum in the current money of
the United States is worth less than the same sum estimated in the
currency of Surinam. The only just rule is, that in such cases the
party who has suffered a loss or injury through the fault of another
shall be allowed such sum, in the currency of the place where the
suit is brought, as most nearly approximates to that which he would
be entitled to recover in the country where the injury or loss

happened and the damage was sustained." It is true the court qualify the above by the remark that "the cases in which actions have been brought on a contract to pay a sum of money in a foreign country, depend on different principles and are not applicable to transactions like that out of which the present action has arisen." But it is not readily perceived why justice should not be done as much in one case as another. All contracts when enforced by legal process are ultimately payable in money. Whether the contract be to pay a given sum of money in a foreign country or to do certain acts, for non-performance of which the injured party may recover damages in such country, cannot logically affect the compensation in way of damages to which he is entitled when seeking redress in another tribunal. Nor is it very easy to see why, if one contracts to pay a thousand dollars in a country where by the law the contract is payable in coin, the measure of damages should be other or different from those where as a common carrier he agrees to deliver a thousand dollars in gold coin. *Cushing v. Wells*, 98 Mass., 550. In each case the loss is the same if the contract is not performed, and no sound reason can be imagined why the damages for non-performance should differ.

"The proper rule," remarks Story in his Conflict of Laws, § 309, "would seem to be, in all cases, to allow that sum in the currency of the country where the suit is brought, which should approximate most nearly to the amount to which the party is entitled in the country where the debt is payable, calculated by the real par, and not by the nominal par, of exchange." If the currency of the country has become depreciated, then depreciation ought to be allowed for. Without that is done, justice is not done. The party to whom the debt is due fails to receive the amount which is his due. If the contract were for specific articles, the measures of which though nominally the same were really different, would any doubt that the measure in use in the country where the contract was to be performed, would be the one which is to govern in that where it is sought to be enforced? But the principle must be the same whether it applies to a measure of quantity or one of value.

As the contract was made and was to be performed in England, the legal tender acts of the United States are inapplicable. The plaintiffs, if they were to be paid in currency, would therefore be entitled to a sum equivalent in value to the debt due at the time and place when and where it was payable.

The case of *Wood v. Watson,* 53 Maine, 300, does not apply. That related to the damage where a foreign bill of exchange had been protested. As the damages in such case had been settled by a long continued series of decisions based upon such usage, which formed a part of the law of the State equally as if determined by statute, at ten per cent., it was held, and correctly, that the rule could not be changed by reason of any monetary crisis, and that such change would be a legislative rather than a judicial act.

It is apparent, therefore, that the plaintiffs are entitled to recover the value of one-twentieth of the freight, earned and payable in London.

By the agreement of the parties "the estimated amount of chartered freight was thirty-three thousand and three hundred dollars, ($33,300) hard Spanish dollars. Upon this sum it is agreed that the plaintiffs were in London, on the fifteenth day of April, 1866, entitled to five per cent. from the defendant, and that said five per cent. remains wholly unpaid, to recover which, this action is brought."

"Five per cent. of the estimated amount of chartered freight" to which the plaintiffs are entitled for brokerage, is five per cent. of thirty-three thousand three hundred hard Spanish dollars. It is neither more nor less than that amount. It is what the plaintiffs would have received had the defendant performed his contract. It has relation to the sum from which it is to be deducted, and is necessarily a portion of that sum. It would not be five per cent. "of the estimated amount" if paid in a depreciated currency, or in dollars of less value than "hard Spanish dollars." Five per cent. then, would be sixteen hundred and sixty-five hard Spanish dollars, for it was to be from the freight earned, and in the hard Spanish dollars, in which the freight was payable. The

defendant was indebted to the plaintiffs for that sum in hard Spanish dollars, or in coin of equivalent value. Payment in dollars of an inferior standard of value, would not be a performance of the contract.

By the statutes of the United States, the Spanish dollar is equivalent in value to our silver dollar, and it is made a legal tender for the payment of all debts and demands, at that rate by Act of Congress passed April 10, 1806, § 1, 2 U. S. Stats. at Large, 374, c. 22.

It is well known that legal tender notes are of variable and fluctuating value. The plaintiffs are entitled to payment in coin, or in currency equivalent in value to the coin when and where the debt was payable. The value of legal tender notes may change between the date of a writ and the rendition of judgment—between the date of an execution and any service thereon. If judgment were to be rendered for the amount due in the currency of the country, the plaintiffs might receive more or less than was due as the currency should oscillate in value. Accordingly, the courts of the United States have recognized the fact that there are two descriptions of lawful money under the Acts of Congress. *Bronson v. Rodes*, 7 Wallace, 229, *Butler v. Horwitz*, 7 Wallace, 258. To avoid the fluctuations in value of legal tender notes as compared with gold and silver coin, they have ordered, when the contract is payable in gold and silver coin or specie, that executions should issue payable in gold and silver. *Trebilcock v. Wilson*, 12 Wallace, 687. The courts of various States following the principles adopted and acted upon by those of the United States, have ordered similar judgments and executions. *Phillips v. Dugan*, 1 Ohio St. R., 466, *Independent Ins. Co. v. Thomas*, 104 Mass. 192.

By R. S. 1871, c. 81, § 1, the Supreme Judicial Court is authorized to make, by general rules, such alterations in the forms of writs "as changes in the law or other causes require." An execution is a writ. Authority to change a writ implies authority to change an execution issued upon a judgment rendered in a suit commenced by such writ.

The contract in the present case was to pay the freight at a certain specified rate. . It can only be exactly performed by a payment according to its terms. Equivalent value will do justice.

To this end, judgment should be entered specifically for the current coin of the United States, and execution should so issue for the debt. The judgment for costs should be general as that may be satisfied by payment of either kind of lawful money. In this way alone the payment of what is due, neither more nor less, will be enforced. *Judgment accordingly.*

CUTTING, WALTON, DICKERSON, DANFORTH and PETERS, JJ., concurred.