### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1864, IN THE FORTY-
EIGHTH YEAR OF THE STATE.

---

## CORDELL *v.* THE STATE.

ADJOURNED TERM—PRACTICE.—A defendant in an indictment for
murder, applied for a change of venue on account of the prejudice
of the judge of the Court. The application was made, on the last
day of the regular term of the Court, as fixed by law. It was
granted, and the Court adjourned to a day fixed, pursuant to the
act of *February* 12, 1855, 2 G. & H. 11, and another judge was called
in to try the cause. The order for the adjournment, and the publi-
cation of the notice were noted, by the clerk, on the blotter, and the
notice made out, handed to the printer, and published in the paper,
before the minutes were made out and signed. On the day to
which the regular term was adjourned, the judge appeared and took
his seat on the bench, heard proof of the order adjourning the term,
&c., signed the minutes of the proceedings of the Court, thus far,
and then gave place to the judge who had been called in to try the
cause, who appeared pursuant to appointment, to preside at the
trial. After he had taken his seat on the bench, the defendant ob-
jected to being tried before him, on the ground that "at the time of
public notice being given of the present adjourned term, and order-

VOL. XXII.—1.

ing publication to be made, said order had not been signed by the regular judge of the Court."

*Held*, That there was no irregularity in the proceeding adjourning the term of the Court.

STATUTES—REPEAL.—The act of *February* 12, 1855, 2 G. & H. 11, providing for extending the terms of Circuit Courts, by adjournment, &c., was not repealed by the act of *December* 24, 1858, id., but is still in force.

SAME.—The re-enactment of an existing provision of law, in a later statute, does not necessarily repeal such former provision.

SAME—INOPERATIVE.—The act of *December* 24, 1858, 2 G. & H. 11, did not pass both houses of the legislature, and consequently never became a law.

INDICTMENT FOR MURDER.—For a sufficient form of an indictment for murder, under the code, see the opinion.

APPEAL from the *Floyd* Circuit Court.

PERKINS, J.—An indictment as follows was duly returned into the *Floyd* Circuit Court:

"The grand jurors for the county of *Floyd*, in the State of *Indiana*, upon their oath present, that *Thomas Cordell*, on the 17th day of *May*, 1863, at the county of *Floyd* aforesaid, did feloniously, purposely, and with premeditated malice, unlawfully kill and murder *Patrick Quirk*, by then and there feloniously, purposely, and with premeditated malice, cutting, stabbing, and mortally wounding said *Patrick Quirk*, with a knife which he, the said *Thomas Cordell*, then and there had and held in his hands contrary to the form of the statute, &c., and against the peace, &c.

"THOMAS M. BROWN, Pros. Att'y.

"A true bill: CHARLES FREDERICK, Foreman."

The defendant appeared and made three successive motions to continue the cause, which were overruled.

He. then applied for a change of venue on account of

Cordell *v.* The State.

prejudice in the county against him. This was overruled. Then he made an application on account of prejudice of the judge, which was granted, and Judge *Chapman* was called in to try the cause at a day of the term adjourned, pursuant to the act of 1855, the application for the change being made on the last day of the session as continuing under the general provisions of the law. On the day to which the regular term was adjourned, Judge *Bicknell,* the judge of the Court, appeared and took his seat upon the bench, heard proof of the publication of the order adjourning the term, &c., signed the minutes of the proceedings of the Court, thus far, and then gave place to Judge *Chapman*, who appeared, pursuant to appointment, to preside at the trial of the case of *The State* v. *Cordell.* After Judge *Chapman* had taken his seat upon the bench,the defendant objected to being tried before him, on the ground that "at the time of public notice being given of the present adjourned term, and ordering publication to be made, said order had not been signed by the regular judge of the *Floyd* Circuit Court."

This objection admits the order to have been regularly made. It amounts to this: On *Saturday*, of a given week, the regular term of the *Floyd* Circuit Court closes. The business of the term is not completed. On the opening of Court in the afternoon of such *Saturday*, the judge orders that on the closing of the business of the day, the term be adjourned to a day named in future, and that the Clerk give notice of the adjournment, by publication. The Clerk notices the order of adjournment and publication on the blotter, makes out the notice, hands it to the printer, and it appears in the ensuing edition of his paper, before the Clerk has been able to make out the complete minutes of the proceedings of the Court, for the day, for the signature of the judge. Such a state of facts, it is claimed, destroys the legality of the order adjourning the term, and deprives the judge at the

adjourned term of jurisdiction. We do not think so. We see nothing irregular in the proceeding. *Green* v. *White,* 18 Ind. 317.

But it is further claimed that the adjourned term itself was unauthorized by law, and hence its proceedings were all void. This position is taken upon the fact, assumed, that the law of 1855, authorizing such terms, was repealed by a law of 1858.

We think the act of 1855 is still in force.

1. The act of 1858 did not repeal the act of 1855, supposing the act of 1858 to be a valid statute. The act of 1855 simply provided for extending the regular term of the Court so long as might be necessary to finish the business pending therein; the act of 1858 contained exactly the same provision, with some unimportant additions as to matters of detail, and a further provision authorizing special terms also. See 2 G. & H. pp. 11 and 372.

But the re-enactment of an existing provision of law, in a later statute, does not necessarily repeal such former provision. *Martindale* v. *Martindale,* 10 Ind. 566, and cases cited; *Alexander* v. *The State,* 9 *id.* 337.

2. We think the act of 1858 never passed both houses of the Legislature, and, consequently, never became operative as a law. This appears by an inspection of the journals of that body, to which the Court has a right to look. See the cases cited in *The State* v. *Bailey,* 16 Ind. on p. 48; see, also, 2 Ind. p. 558; 8 *id.* 156.

The act of 1855, providing for adjourned terms, is in full force.

Objection is made to the indictment. It is claimed that it does not charge, in legal form, a public offence. There was no motion below to quash; and some defects in an information or indictment may be waived by a failure to make a motion to quash. We are cited by counsel, on this point, to

Cordell *v.* The State.

Wharton's Cr. L. p. 863; *Murphy* v. *The State*, 8 Blackf. 498; *Hare* v. *The State*, 4 Ind; 241.

We think the indictment sufficient under the code. It shows the death of the assaulted individual. The word murdered, *ex vi termini*, imports death.

Under the code, we can not think it necessary that the indictment for murder by blows, should state the particular part of the body on which the blows fell. Upon the trial of the cause, that fact might be material as one affecting the question of intention in their infliction; that is, if they were upon a vital part, intention to kill might be inferred when it might not be if the blows were upon a part not considered as a vital part of the body.

We admit the common law required the allegation in the indictment. *Dias* v. *The State*, 7 Blackf. 20. But in Arch. Cr. Pl., (10th ed.) side paging 408, even as to this, it is said that "in this and other instances there is a particularity required in an indictment for murder which it would be ridiculous to attempt to account for or justify, for the same strictness is not required as to the evidence necessary to support it. If, for instance, the wound be stated to be on the left side, and proved to be on the right side, or alleged to be in one part of the body and proved to be in another, the variance is immaterial, and for that reason the objection can now only be taken by demurrer." This shows that even at common law the allegation stood upon the same footing as the allegation as to the hand in which the weapon was held, the depth and size of the wound, &c., all of which are now held not to affect any substantial right of the defendant.

The following cases are cited as sustaining the indictment in the case at bar: *Dukes* v. *The State*, 11 Ind. 557; *Reed* v. *The State*, 8 Ind. 200; *Cronkhite* v. *The State*, 11 Ind. 307; *The State* v. *Farley*, 14 Ind. 23; *Malone* v. *The State*, 14 Ind. 220. To which may be added *The State* v. *Murphy*, 21 Ind. 441.

It must be at all times remembered that crimes, with us, are all defined by statute, that the words of the statute are to be given their usual meaning in interpreting it; and that the 20th section of the 4th article of the constitution ordains that, "every act and joint resolution shall be plainly worded, avoiding, as far as practicable, the use of technical terms." Interpreting the indictment in the spirit of these rules and provisions, we think it would be understood by a man of common understanding to charge the intentional and unlawful killing of a human being, with premeditated malice.

*Per Curiam.*—The judgment is affirmed, with costs.

*Henry Crawford*, for the appellant.

*Thomas M. Brown*, Prosecuting Attorney, for the appellee.