## BECHTELHEIMER *v.* THE STATE.

CRIMINAL LAW.—*Indictment.*—*Murder by Poisoning.*—*Attempt to Commit Rape.*—*Surplusage.*—*Cause of Death.*—*Purpose to Kill.*—An indictment for murder commenced by charging that the defendant "unlawfully, feloniously and with premeditated malice, did kill and murder one" A. B., "a woman over the age of fourteen years, in an unlawful attempt, forcibly, feloniously and against her will," etc., "to ravish and have," etc., "carnal knowledge of her," etc., "by," etc., "purposely, wilfully, unlawfully, feloniously and with premeditated malice, administering and causing to be administered unto" her "a large quantity of deadly poison." Then followed allegations that the defendant had mingled the poison with wine and had caused her to drink it, with the intention that such poison should create in her an uncontrollable desire for sexual connection, so that the defendant thus could carnally know her himself. The concluding allegations were that the defendant, unlawfully intending to satisfy his sexual passions upon her body, as before set out, "in the manner and by the means aforesaid," etc., "feloniously, wilfully, unlawfully and of premeditated malice, did kill and murder her," A. B., etc., but there was no allegation in the indictment of any attempt by the defendant to have sexual connection with her.

*Held,* that the indictment is sufficient as charging a murder by the administering of poison, but not of a murder in an attempt to commit a rape; the allegations in respect to the attempted rape being treated as mere surplusage.

*Held,* also, that such indictment sufficiently shows that the woman died of the poison administered to her.

*Held,* also, that a *purpose* to kill the woman, on the part of the defendant, is sufficiently alleged.

Bechtelheimer v. The State.

SAME.—*Murder in the First Degree.—By Poisoning.—Purpose to Kill.—Statute Construed.*—Under section 2 of "an act defining felonies," etc., 2 R. S. 1876, p. 423, a purpose to kill is an essential ingredient in the crime of murder in the first degree, where the killing is effected by administering poison.

SAME.—*Malice.*—Where a purposed killing is charged in an indictment for murder by administering poison, it is not necessary to allege that it was done with malice, in order to constitute murder in the first degree.

SAME.—*Instruction to Jury.*—Where a defendant was on trial for having committed murder in the first degree by administering poison, it was error for the court to refuse to instruct the jury trying the cause, that if they found that the poison was administered to the deceased, a woman, only to excite her sexual passions and thereby enable the defendant to carnally know her, and without any purpose or intention to kill her, they could not find the defendant guilty of murder.

From the Kosciusko Circuit Court.

*E. Haymond, L. W. Royse* and *H. S. Biggs,* for appellant.

*C. A. Buskirk,* Attorney General, *J. A. Campbell, S. W. Cosand* and *W. S. Marshall,* for the State.

WORDEN, C. J.—The appellant was indicted, jointly with one William Young, for the murder of Susan Ingram. The indictment contained three counts. Bechtelheimer was separately put upon trial, and was convicted upon the third count and sentenced to the state-prison for life. The conviction upon the third count of the indictment operated as an acquittal upon the others. Motions were made in the court below to quash the third count, and in arrest of judgment, but were overruled. These rulings are assigned for error. The third count was as follows, viz.:

" The grand jurors aforesaid, for the county aforesaid, upon their oaths aforesaid, do further charge and present, that Martin Bechtelheimer and William Young, at the county of Kosciusko, in the state of Indiana, on the 14th day of July, A. D. 1875, unlawfully, purposely, feloniously and with premeditated malice, did kill and murder one Susan Ingram, a woman over the age of fourteen years, in an unlawful attempt, forcibly, feloniously and against her

will, to then and there ravish and have unlawful carnal knowledge of her, the said Susan Ingram, (the said Martin Bechtelheimer and William Young, and each of them, then and there having the present ability to ravish and carnally know her, the said Susan Ingram,) by then and there purposely, wilfully, feloniously, unlawfully and with premeditated malice, administering and causing to be administered unto the said Susan Ingram, a large quantity of a certain deadly poison, commonly known as and called cantharides, which said cantharides the said Martin Bechtelheimer and William Young, and each of them, had unlawfully, feloniously and with premeditated malice, mixed and mingled with certain wine, unlawfully, purposely, wilfully, feloniously and with premeditated malice, to be then and there, and at the county aforesaid, taken, drank and swallowed down into the body of the said Susan Ingram. They, the said Martin Bechtelheimer and William Young, and each of them, then and there intending and believing that the properties of the said cantharides, aforesaid, were such that, when drank down into the throat and body of the said Susan Ingram, it would create and greatly excite and increase her sexual passions, and create and excite in her a desire, which she could not control, to have sexual, carnal intercourse with men, and they, the said Martin Bechtelheimer and William Young, and each of them, then and there, and at the time and place aforesaid, believing such administration of said cantharides would, and thereby purposing and unlawfully intending that it should, so excite and increase the sexual passions and desires for sexual intercourse with men, in her, the said Susan Ingram, that she, the said Susan Ingram, by the means and operations of the said cantharides upon her system, would so greatly desire to have sexual, carnal intercourse with men, that she could not control her will, and resist the same, and that by the unlawful means and operations of said cantharides, aforesaid, so taken and swallowed down into her system, her,

the said Ingram's will to resist having sexual intercourse with them would be, then and there and thereby, broken down and overcome, and they, the said Martin Bechtelheimer and William Young, and each of them, then and there and thereby, be enabled to have unlawful, sexual, carnal intercourse with her, the said Susan Ingram, forcibly and against her will, and she, the said Susan Ingram, not knowing the said poison, aforesaid, had been mingled and mixed with said wine, aforesaid, did take, drink and swallow down into her body, then and there and at the time and place aforesaid, several large quantities of said poison aforesaid, the said Martin Bechtelheimer and William Young, and each of them, then and there well knowing that the said cantharides, aforesaid, so mixed and mingled in said wine by them, as aforesaid, was a deadly poison, and they, the said Martin Bechtelheimer and William Young, and each of them, then and there knowing the said cantharides to be a deadly poison, administered and caused the same to be administered, then and there, unto the said Susan Ingram, a woman over the age of fourteen years, with the unlawful intent, then and there, at the time and place aforesaid, and by the means and operations of the poison, as aforesaid, her, the said Susan Ingram, to unlawfully ravish and carnally know by force and against her will, the said Martin Bechtelheimer and William Young, and each of them, then and there having the present ability to unlawfully ravish and carnally know her, the said Susan Ingram, against her will, under and by the means and operations of the poison, aforesaid, upon the system of the said Susan Ingram, aforesaid. And the grand jurors aforesaid, upon their oaths aforesaid, charge and present, that the said Martin Bechtelheimer and William Young, her, the said Susan Ingram, then and there and thereby, at the time, in the manner and by the means aforesaid, and at the place aforesaid, feloniously, wilfully, unlawfully and of premeditated malice, did kill and murder her the said

Susan Ingram, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Indiana."

The count was evidently intended to charge the offence defined by the second section of the act defining felonies, etc., 2 R. S. 1876, p. 423, which is as follows:

"If any person of sound mind shall purposely and with premeditated malice, or in the perpetration, or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison, or causing the same to be done, kill any human being, such person shall be deemed guilty of murder in the first degree," etc.

The count, it is needless to say, is laden with much unnecessary verbiage and useless repetition, but we think it alleges sufficient to constitute the crime of murder, as defined by the statute above set out.

It commences by alleging that the appellant and Young, purposely and with premeditated malice, killed and murdered Susan Ingram, in an attempt to commit a rape upon her. But this statement is followed up by averments to the effect that the murder was perpetrated by means of the administration of poison; and the count concludes, that the appellant and Young, "by the means aforesaid," that is, as we understand it, by the administration of the poison, wilfully, and of premeditated malice, killed and murdered the said Susan Ingram. If the count can be held good at all, we think it clear that it must be upon the ground that it charges a murder by the administration of poison, and not upon the ground that it charges a murder in an attempt to commit a rape. To be sure, the count charges, in the beginning, that the murder was committed in an attempt to perpetrate a rape, but when the means and cause of death are described, they are shown to have been the administration of the poison. No attempt to perpetrate the rape is shown. The poison may have been administered for the purpose of exciting the sexual passions of the victim, and with

the *intent* to have sexual connection with her while under the influence of the drug, but this does not amount to an attempt to commit a rape. Assuming that, if the appellant had succeeded in having connection with the girl by means of the drug, it would have constituted a rape, still, no attempt to have such connection is shown. An *intent* to do a given thing is not to be confounded with an *attempt* to do the same thing. The one may exist without taking any steps whatever toward the accomplishment of the purpose; the other implies more, for an attempt implies the taking of some such steps.

We have had some doubt whether the count should not be held bad, as being repugnant in its allegations, in this; that it first charges that the murder was committed in an attempt to perpetrate a rape, and then charges that it was committed by the administration of poison, no attempt to perpetrate a rape being shown. But we have concluded, that, as the allegations are sufficient to show a case of murder by poisoning, and insufficient to show a case of murder in an attempt to commit a rape, the allegations in respect to the attempted rape may be regarded as surplusage and not be taken into consideration.

But it is objected by the appellant, that it is not alleged in the count that Susan Ingram died of the poison thus administered.

It is, however, alleged that the appellant and Young, " by the means aforesaid," that is, by the administration of the poison, " did kill and murder her." If this allegation is true, the woman is dead, for the word murdered, *ex vi termini*, imports death. *Cordell* v. *The State*, 22 Ind. 1. If the allegation is true, moreover, she died by means of the administration of the poison. This objection is not well taken.

It is further objected, that the count nowhere alleges that the poison was administered by the appellant and Young, with an intention or purpose to kill Susan Ingram. This was unnecessary, in view of the allegations

which were made. The count charges first that the appellant and Young, "purposely, feloniously and with premeditated malice, did kill and murder one Susan Ingram." Then it goes on to describe the means of killing, and concludes that by the means aforesaid, they "feloniously, wilfully, unlawfully and of premeditated malice, did kill and murder her," etc. We think a purpose to kill is sufficiently charged. When the purpose to kill is thus charged, and the means of killing thus described, we do not see any necessity of further adding, that the means were employed for the purpose of killing. The allegations made bring the case clearly within the language of the statute on which the count is based, and that is sufficient. There was no error, as we think, in overruling the motion to quash, and in arrest of judgment.

The appellant moved for a new trial, assigning several causes therefor, but the motion was overruled, and he excepted. It will be unnecessary to consider all of the grounds on which the new trial was asked, as it is clear that, on one of them, his motion should have prevailed. The case seems to have been tried upon the theory that, in murder by administering poison, a purpose to kill is not a necessary ingredient of the offence. The appellant asked several instructions, embodying the contrary proposition, which were refused, and exception taken. We set out one of them, as sufficient for the purposes of the case.

"4th. If you find from the evidence, that the defendant Martin Bechtelheimer administered to Susan Ingram cantharides for the purpose of exciting her sexual passions, and thereby and by means thereof enabling him more easily to have sexual intercourse with her, the said Susan Ingram, and death resulted from such administration, and it was so administered by said defendant without any intention or purpose to kill the said Susan Ingram, under that state of facts you can not find the defendant guilty of murder."

The questions raised by the instructions asked and

refused involve the construction of the section of the statute on which the indictment is based. The question, to be more specific, is, whether, under that section, a purpose to kill is an ingredient of the crime of murder, where the killing is effected by the administration of poison. We are not aware that this question has ever been decided in this state.

We have three classes of felonious homicides:

First: murder in the first degree, as defined in the section of the statute above set out.

Second: murder in the second degree, which consists in "purposely and maliciously" killing any human being, "but without premeditation." 2 R. S. 1876, p. 426, sec. 7.

Third: manslaughter, which consists in unlawfully killing "any human being without malice express or implied either voluntarily upon a sudden heat, or involuntarily, but in the commission of some unlawful act." *Id.*, sec. 8.

Thus it is seen, that in order to constitute murder in the second degree, a purpose to kill is essential; and a voluntary or purposed killing may amount to only manslaughter, where the killing is unlawful, but perpetrated upon a sudden heat and without malice. In giving a construction to the section above set out, defining murder in the first degree, we should not overlook the general intent of the legislature in classifying the different grades of criminal homicide, nor should we lose sight of the general principles of criminal law, or the object to be attained by legislation intended to prevent and punish the commission of crime. The legislature have made a purpose to kill a necessary ingredient in murder in the second degree, and it is not to be supposed, without very cogent reasons, that they meant to make a killing without such purpose murder in the first degree, a higher grade of offence than that in which a purpose to kill is necessary.

We think the section of the statute, taking into con-

sideration its language, and the object and purpose thereof, should be so construed as that a purpose to kill shall be deemed essential to the crime of murder in the first degree, where the killing is effected by administering poison. It may be read as follows, leaving out such matters as are not applicable here: "If any person of sound mind, shall purposely, * * * by administering poison, or causing the same to be done, kill any human being, such person shall be deemed guilty of murder in the first degree," etc. In other words, the adverb "purposely" may be held to qualify the verb "kill," without doing much violence to the language employed, and this will be carrying out what seems to us to have been the intention of the legislature. This construction is adopted, not so much from the language employed, considered by itself, as from the results that would flow from a different construction. If no purpose to kill is necessary to constitute murder, where the killing is brought about by administering poison, then the most innocent act of one's life may turn out to be a murder, and that too in the first degree, subjecting him to the gallows or imprisonment for life. If a purpose to kill is not necessary, then the man is a murderer, who innocently administers what he supposes to be a proper dose of medicine, but which turns out to be a poison which kills the party taking it. The legislature evidently did not intend to establish any such theory in the criminal law. By holding that a purpose to kill is necessary to constitute murder in such case, we carry out what seems palpably to have been the intention of the legislature. Such was the decision of the supreme court of Ohio, in the case of *Robbins* v. *The State*, 8 Ohio State, 131, upon a statute very similar to, if not identical with, our own.

The purpose to kill, or the absence of such purpose, is, of course, to be determined from all the circumstances attending the transaction. Where a purposed killing is charged by administering poison, it is not necessary to

allege that it was done with premeditated malice, or, indeed, with malice at all, in order to constitute murder in the first degree. This, the statute does not require. The purposed killing by poison, carries with it conclusive evidence of premeditated malice.

We are of opinion that the court erred in refusing the charge above set out, and some others of similar import, and that the judgment should be reversed.

The judgment below is reversed, and the cause remanded for a new trial; and the clerk will give the proper notice for a return of the prisoner.