FISHER *v.* STATE.

Opinion delivered October 13, 1913.

1. HOMICIDE—DEATH—INDICTMENT—SUFFICIENCY.—An indictment for homicide which charges that defendant did "unlawfully * * * kill and murder one J. C. * * * by then and there stabbing and cutting him, * * * with a certain knife * * * held in his hand with * * * intent then and there to kill and murder him," * * * is not defective for failing to state that J. C. died, and the indictment held sufficient to warrant a conviction, since the words "did kill and murder J. C.," gave defendant specific notice that J. C. died from the effects of the stabbing, and of the offense with which he was charged. (Page 462.)

2. DEFINITIONS—"KILL."—In an indictment for homicide, that defendant "did unlawfully kill and murder one J. C.," the word "kill" is used in its ordinary acceptation and means to slay, to put to death, to deprive of life. (Page 462.)

3. HOMICIDE—SELF-DEFENSE—NECESSITY OF ACT.—In order to avail himself of the plea of self-defense, it must have appeared to defendant that the killing was necessary in order to save his own life, or to prevent his receiving great bodily harm or injury. (Page 463.)

4. HOMICIDE—SELF-DEFENSE—ATTACK.—The law of self-defense does not imply the right of attack, and defendant can not invoke the law of self-defense, no matter how imminent his peril, if armed with a deadly weapon, and with a felonious intent, he sought out the deceased. (Page 464.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed.

### STATEMENT BY THE COURT.

The appellant was indicted for murder in the first degree, the indictment alleging:

· "The said Tom Fisher, in the county and State aforesaid, on the 24th of December, 1912, did unlawfully, wilfully, feloniously and of his malice aforethought, and after premeditation and deliberation, kill and murder one Jack Chandler, a human being, by then and there stabbing and cutting him, the said Jack Chandler, with a certain knife which he, the said Tom Fisher, then and there had and held in his hand, with the wiful, felonious, malicious, premeditated and deliberate intent then and there to kill and murder him, the said Jack Chandler, against the peace," etc.

A demurrer was interposed to the indictment and overruled and exceptions duly saved.

It appears from the testimony that Jack Chandler and appellant, after having had a fight the day before, on the day of the killing came together on the corner of East Broad Street, in Texarkana, near the Dixie Theater, and renewed their quarrel. Fisher first came up and was talking to W. A. Coleman, a peace officer, when Chandler walked up and something was said between them about the prior fight; both were drinking. The officer walked between them and started west to the justice's office. He had hold of both of them and they had proceeded but a few steps, Fisher on his right next to the buildings, and Chandler on the left, next to the street, with the officer about the middle of the walk, when the officer discovered Fisher had a knife open in his hand. He turned Chandler loose and pushed Fisher three or four feet up against the wall of the building and called for Doc Johnson to help take the knife. The defendant was doing nothing, but wouldn't give up the knife. He didn't see deceased after turning him loose, as he was behind him, and he had Fisher up next to the wall for a minute or so, and just as Fisher made the lick at the deceased he said, "I bought this knife to cut his damn throat." He saw the lick made over his shoulder and said that Fisher was right up against him. The difficulty occurred about 1 or 2 o'clock in the afternoon, and the deceased's throat was cut clear round, from ear

to ear, and he died that night. He also said that if Chandler had remained where he left him that Fisher could not have reached him by striking him with the knife; that he thought Chandler must have walked up behind him. It was a brand new knife.

Several witnesses testified that they saw the difficulty and that Coleman pushed Fisher up on the sill plate and pushed Chandler the other way and called for help. One witness said that he grabbed Fisher's hand and just as he did he jerked loose from Coleman and cut Chandler. "I saw Chandler standing just where Coleman had left him; he never advanced, and his hands were by his side. Just before the cutting Fisher said he would do something and Chandler said no he wouldn't, and Fisher said, "Yes, the hell I won't," and about that time cut over Coleman's shoulder, and Fisher and Coleman were struggling. Coleman called me first and I didn't go, shook my head, and before he called me again I saw the knife in Fisher's hand and had time after the second call to take twenty-five steps before the cutting. Coleman was bound to have taken two or three steps toward the building after turning Chandler loose. Witness didn't think Chandler moved at all. He may have been a little inside the walk.

Joe Vinson, a justice of the peace, said he was five or six feet from the parties when Chandler was killed, and saw the officer turn Chandler loose and hold Fisher and push him toward the door. He then saw the knife and ran to them, and before he got there Fisher made the lick. After Coleman turned him loose Chandler followed after them; must have been twenty-five feet up the street. Chandler came slowly behind, and just before the lick, was 'a few feet or steps behind, doing nothing. Fisher jerked loose, made a step or two, reached out and cut Chandler, who was then standing with his hands down. Fisher stepped off the sill plate when he struck and advanced a step or two.

Q. Now, isn't it a fact he struck the blow over the shoulder of Coleman?

A. No; it isn't a fact; he got clear loose from him.

E. L. Butler stated he saw Fisher about thirty minutes before the cutting about 100 feet from where the difficulty occurred, who asked if I had seen the deceased and said, "I am going to kill him; I have just bought a knife;" and I advised him that that wouldn't do, and he said that "he had done been butting in on him and he was going to cut him in two." He had a new spring back knife. Fisher acted like he was drunk, was reeling and staggering about.

Henry Jones testified that appellant swung around toward the deceased as he cut him. That deceased was doing nothing and was trying to get away. That they were holding them apart. That he heard defendant tell Butler, the other gentleman, that he was going to put the knife in him. That was the gentleman that was killed. This conversation was about fifteen minutes before the fight.

Defendant testified that he and the deceased had been friendly always, until a day or so before the killing; that he was drunk at that time; got drunk Saturday night, and continued drunk until Tuesday morning. That he and the deceased had a row at Brice's restaurant, where they had been drinking beer that morning, but he didn't remember what it was about, and they were cursing each other, and deceased called him a son-of-a-bitch, and they had tried to fight. That he didn't remember buying the knife that day, nor meeting Coleman, the officer, at the corner, nor anything up to the time of the cutting; to the best of my recollection, the first I remember about Coleman or Chandler being on the street was when all three got together; Jack made some remark; seems as though we was trying to get together; Jack said, "You son-of-a-bitch, I'll get you now," or something like that, and I struck at him. Jack had put his hand in his pocket and taken out what I taken to be a knife and come up behind Coleman; he had the knife in his hand, kind of drawed up in his hand, and I used my knife, because I thought he was going to cut at me. I

don't know where I was when I cut him. I was drunk. I don't remember Coleman trying to take the knife away from me, nor saying I had bought the knife to cut his throat; Chandler was advancing on me with the knife when I cut him; I can remember he had the knife, and I must have had one in my hand when I cut him. I cut him because he was advancing on me with a knife. I don't remember trying to cut him in any particular place. I did have mind enough to try to protect me when he was advancing on me; Jack had a knife in his hand when I first saw it; I don't remember which hand he had the knife in, but he had it open. I don't know how many steps he took toward me, and I don't know what Coleman was doing when I cut him.

Another witness said that Chandler was walking over toward Fisher and he saw him pull his hand out of his pocket, with his left hand, while Fisher was up against the wall and doubled up his fist as he went toward the defendant. He was ten feet distant, and he didn't believe that Fisher got away from the officer when he cut deceased. He thought he reached out over the officer's shoulder. Chandler was walking toward him with his fist doubled up when he was cut, but didn't strike at the defendant.

Another witness said he heard them quarreling, and deceased said, "You treated me dirty, and I am going to get even with you." A man walked between them and pushed Chandler away and carried Fisher toward the store. That Chandler moved his hand to his pocket and advanced to Fisher, who was up next to the wall, and that Chandler had got in reach of the defendant when he was cut. I never saw him draw his hand out. I never heard anything said by either of them at that time and never saw any movements made.

There was other testimony tending to show that appellant broke away from the officer, and cut the throat of the deceased while he was standing with his hands down and making no demonstration whatever, while

some of the testimony tends to show that he made the fatal thrust over the officer's shoulder.

None of the witnesses stated that he made any attempt to get away from the officer and the difficulty.

The court instructed the jury, giving, over appellant's objection, instructions numbered 9 and 10 and refusing to give requested instruction numbered 21, as follows:

No. 9. In ordinary cases of one person killing another in self-defense, it must appear to the defendant that the danger was so urgent and pressing that in order to save his own life, or prevent his receiving great bodily harm or injury, the killing was necessary; and it must appear also that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further contest before the mortal blow or injury was given.

No. 10. The law of self-defense does not imply the right of attack. If you believe from the evidence in this case that the defendant, armed with a deadly weapon, sought the deceased with the felonious intent to kill him, or sought or brought on or voluntarily entered into the difficulty with the deceased with the felonious intent to kill him, then the defendant can not invoke the law of self-defense, no matter how imminent the peril in which he found himself placed.

No. 21. You are instructed that even though you should find the defendant either invited, or provoked the attack, yet, if you further find that the defendant was pushed or shoved by Mr. Coleman away from and apart from the deceased, and you find that deceased thereupon followed up the defendant, and that deceased was making or was about to make an assault upon the defendant with a deadly weapon, and that it reasonably appeared to the defendant that he would receive great bodily injury, then you are instructed, if the defendant was restrained by Coleman, it was not his duty to retreat, but he had a right to defend himself against the assault of the deceased.

The jury returned a verdict of murder in the second degree, fixing appellant's punishment at eight years in the penitentiary, and from the judgment this appeal comes.

*Louis Josephs, James S. Steel, J. S. Lake* and *James D. Head,* for appellant.

1. The indictment was fatally defective in that it wholly failed to aver that deceased died of any wounds inflicted by defendant. 93 Ark. 81; 94 *Id.* 242; 95 *Id.* 48; 55 *Id.* 556; 70 *Id.* 521; 85 N. C. 581; 163 U. S. 662.

2. The instructions as to the duty of defendant to retreat were erroneous. 99 Ark. 474. Instruction No. 13 was correct. 69 S. W. 871.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. The indictment is good. 80 Pac. 1125; 22 Ind. 1; 14 S. W. 122; 63 Pac. 752; 4 Nev. 265; 33 La. Ann. 227; 71 Ga. 44; 43 Cal. 29; 13 Minn. 371.

2. We see no error in the instructions, nor in excluding of testimony. 100 Ark. 201; 85 Ark. 300-303.

Kirby, J., (after stating the facts). Appellant challenges the sufficiency of the indictment, claiming it does not allege that death resulted from the wound inflicted by him upon the deceased. The indictment charges that he did "unlawfully * * * kill and murder one Jack Chandler * * * by then and there stabbing and cutting him, the said Jack Chandler, with a certain knife * * * held in his hand with * * * intent then and there to kill and murder him, the said Jack Chandler."

It is true, it does not say that he died and that his death was caused from the wound inflicted by the stroke with the knife, but it does say he did kill and murder him with a knife held in his hand, by cutting and stabbing him with the intent to kill and murder him, and although the word "murder" has a technical meaning, which may be ascribed to it in the indictment, the word "kill" is by no means technical, it is used in its ordinary acceptation and means unmistakably to slay, to put to death, to

deprive of life, and when the indictment charges that the defendant "did kill and murder Jack Chandler * * *" it gave him clear and specific notice that Jack Chandler died from the effects of the stabbing, and of the offense with which he was charged. Neither was it defective in failing to specifically alleged that the deceased died within a year and a day after the infliction of the wound. It is true our statute (Kirby's Digest, § 1774) provides that in order to make the killing murder or manslaughter, it is requisite that the person injured die within a year and a day after the wound was given, but under other statutes, requiring what indictments shall contain and providing that none is insufficient for "any defect which does not tend to prejudice the substantial rights of the defendant on the merits," it is immaterial that no specific allegation is made of the death resulting within such time after the mortal wound, since murder has a technical meaning, and when it is sufficiently alleged in the indictment the defendant is put upon notice that death resulted within the time specified by law to make the offense of that grade. Kirby's Digest, § § 2228-9 and 2243; *State* v. *Sly,* 80 Pac. (Idaho) 1125; *Cordell* v. *State,* 22 Ind. 1; *Caldwell* v. *State,* 14 S. W. 123-4; *State* v. *Kirby,* 63 Pac. 752; *Thomas* v. *State,* 71 Ga. 44; *People* v. *Sanford,* 43 Cal. 29; *State* v. *Ryan,* 13 Minn. 371.

Instructions numbered 9 and 10 correctly state the law, and were applicable to the case made. The evidence shows that after appellant and deceased were arrested, and while they were being taken to the office of the justice, the officer discovered open in appellant's hand a new dirk knife, which he had purchased and exhibited to witnesses, declaring that he bought it to kill deceased with, and there was much testimony tending to show that deceased was standing where the officer left him when he tried to wrest the knife from appellant or prevent him using it, with his hands by his side, making no attempt whatever to assault appellant when the fatal blow was struck. It also tends to show that appellant broke

away from the officer, and made two or three steps toward deceased, and struck him with the knife, cutting his throat from ear to ear. That he did this, notwithstanding the officers and others were trying to prevent him and take the knife from him. He claims he thought the other man was advancing upon him, and believed that he had a knife and that he struck the fatal blow in order to protect himself; but no witness said for him that he attempted in any way to avoid the difficulty or get away from the officer or to get out of the way of deceased, and he himself does not contend that he did.

Neither was error committed in refusing to give instruction No. 21, as requested. The evidence shows that appellant had voluntarily entered into the difficulty; that he was about to assault the deceased and the officer to prevent him doing so pushed him aside and tried to wrest the knife from him, and that he made no effort whatever to go around the officer or attempted to get away from the difficulty, but broke loose and went by the officer, or pushed him back and struck over his shoulder and killed the deceased, who was unarmed, so far as the testimony shows, and was not at the time, according to the great preponderance of it, making any hostile demonstration toward appellant. Instruction numbered 9 correctly covered the phase of the case upon which this instruction was asked. Neither was there error committed in refusing to allow the witness, Z. R. Fisher, to state what the deceased said to him after the cutting relative to who was to blame for the trouble. The conversation was not a part of the *res gestae*, was not shown to have been made under such circumstances as to render it admissible as a dying declaration, and was but a mere expression of an opinion and inadmissible on that account.

We find no prejudicial error in the record, and the judgment is affirmed.