THE PEOPLE OF THE STATE OF CALIFORNIA, RESPONDENTS, v. ROBERT FRANCIS, APPELLANT.

CRIMINAL PRACTICE.—The deposition of absent witnesses, who reside out of the State, and who are not amenable to the processes of our Courts, is expressly prohibited by the provisions of the Criminal Practice Act.

CRIMINAL PRACTICE — AFFIDAVIT FOR POSTPONEMENT OF TRIAL. — An affidavit which states that affiant believes he can procure the attendance of witnesses residing out of the State, or their depositions, by the next term of Court, is defective—being in the alternative.

IDEM.—If, in an affidavit for postponement of trial, the defendant states, on information and belief, that he can procure the personal attendance of witnesses from a distant country, he must also set forth the reasons of his belief, and the nature of his information, or the showing will be insufficient.

CRIMINAL LAW—INSANITY.—It is only of habitual insanity, when proved once to have existed, that the law entertains the presumption that it continues, until the contrary is shown—otherwise of spasmodic, or temporary mania.

CRIMINAL PRACTICE—EVIDENCE TO JUSTIFY INSTRUCTIONS.—There should be some evidence tending to show a settled, general insanity, as contradistinguished from a mere temporary aberration, or hallucination, to justify instructions which do not recognize such distinction.

APPEAL from the District Court of the Second District, County of Plumas.

The defendant was tried for murder, and found guilty in the second degree.    He appealed to this Court.

The facts are stated in the opinion.

*Haymond & Stratton,* for Appellant.

*First*—The Court erred in denying appellant's motion for a continuance.

The affidavit for a continuance sets forth : "That said witnesses reside in Canada.    That neither they or either of their *attendance* or depositions, could, by any amount of diligence, have been procured for this term of the Court, *but can,* as deponent is informed and believes, be procured in time for the next term of this Court."    There is not a word about taking depositions in Canada, but the defendant promises to have the witnesses in attendance, or have their depositions.    Under the authority of *People* v. *Dodge* (28 Cal. 445), the defendant was entitled to a continuance at the first term after indictment, to enable him to attempt to procure the personal attendance of his witnesses.

The affidavit promises the attendance, or their depositions, on the trial.    It must be construed to mean that the defendant will produce their testimony on the trial, either by the mouths of the witnesses or by means of legal depositions.

*Second*—The instruction touching the presumption of the continuance of insanity, when shown once to have existed, should have been given as asked, without distinguishing the different species of mental derangement.

All the evidence in the case tended to prove that species of insanity to which the presumption of continuance attaches ; and it would have been out of the case and highly improper

for the Judge to have delivered any charge as to insanity, the immediate result of disease. Again, the jury had been fully and ably instructed as to the degrees and character of insanity that would avail the defendant, and it was not necessary to incorporate the whole of those matters in every instruction asked by defendant.

The instruction was directed to the simple question of the presumption of continuance, under the facts of the particular case. Whether the insanity was of the nature and degree that would excuse an act otherwise criminal, was left open to be determined in view of the rules laid down in other instructions given.

*Jo Hamilton,* Attorney General, for Respondents.

*First*—The defendant placed his desire for a continuance solely on the ground of evidence in Canada. He nowhere proposes to have the witnesses from Canada before the Court, but his whole affidavit proceeds on the theory that he expects to be able to have the depositions of the witnesses at the next term of the Court. The taking of depositions in the case proposed in the affidavit is expressly prohibited by Section 562 of the Criminal Practice Act.

*Second*—The instruction asked by the defendant, as to the presumption of insanity, the testimony having proved it once to exist, was too broad. It ignored all temporary insanity, either from immediate causes, such as illness, drunkenness, or from any other cause.

CROCKETT, J., delivered the opinion of the Court:

The defendant was indicted for the murder of one Oliver, on the 26th of September, 1868. The indictment was found April 6, 1869, and was filed in the District Court May 6th of that year, and on the twelfth of the same month, the defendant was arraigned and pleaded "not guilty." The trial commenced on the 28th of May, and the defendant was convicted of murder in the second degree. The defense relied upon was the insanity of the accused, at the time he com-

mitted the act. When the cause was called for trial, the defendant moved for a continuance, on his own affidavit, as to the materiality of certain absent witnesses residing in Canada; who, he alleged, would testify that insanity is hereditary in his family, and extends back through three generations on the maternal side. In his affidavit, referring to the absent witnesses, he says "that neither their or either of their attendance or depositions could have been, by any amount of diligence, procured for this term of Court, but can, as deponent is informed and believes, be procured in time for the next term of this Court," and that there are no other witnesses whose attendance or depositions could have been procured, who would testify to the same facts, The District Court conceded the testimony to be material, but held that under our statute the defendant might have taken the depositions of the absent witnesses, at any time after his arrest, even before the indictment was found, and consequently that no proper diligence was shown. The application for a continuance was therefore denied, and the defendant excepted.

Section 562 of the Criminal Practice Act is as follows: "When a defendant has been held to answer a charge for a public offense, he may, either before or after an indictment, have witnesses examined on his behalf, as prescribed in this chapter, *and not otherwise.*" The next Section (563) is in the following words: "When a material witness for the defendant is about to leave the State, or is so sick or infirm as to afford reasonable grounds for apprehending that he will be unable to attend the trial, the defendant may apply for an order that the witnesses be examined conditionally on a commission." The succeeding sections contain minute directions in respect to the method to be pursued in obtaining, executing and returning the commission. Section 566, after providing that the application for the commission must be made upon affidavit, requires that the affidavit, amongst other things, must show "that the witness is about to leave the State, or is so sick or infirm as to afford reasonable grounds for apprehending that he will not be able to attend the trial."

These are the only provisions of our statute allowing a defendant in a criminal action to take the depositions of witnesses in his behalf, and it is quite plain that they do not include the case we are considering. The express provision in Section 562, that depositions may be taken "as prescribed in this chapter, *and not otherwise,*" inhibits the taking of them in any other cases or contingencies than therein provided. The next section enumerates explicitly the only contingencies which will authorize the defendant to take the deposition of a witness, to wit: First—That the witness is about to leave the State; or, Second—That he is so sick or infirm as to afford reasonable grounds for apprehending that he will be unable to attend the trial. Neither of these conditions were applicable to the defendant's case, and he could not, therefore, have taken the depositions of the absent witnesses, either before or after the indictment.

In the case of *The People* v. *Dodge* (28 Cal. 445), we held that the defendant in a criminal action is not bound to take the deposition of a sick or infirm witness who is within reach of the process of the Court, but may insist on his personal attendance, if it can be procured within a reasonable time, and that the Court ought to allow such reasonable time for that purpose, and that a continuance for one term with that view, was not unreasonable.

In that case, the absent witness was within reach of the process of the Court, and had been duly summoned, but was too ill to attend the trial. But, in this case, the absent witnesses reside in a foreign country, remote from the place of trial, and, of course, are in no wise amenable to the process of our Courts. The affidavit of the defendant is extremely vague and unsatisfactory. It does not state explicitly his belief that the personal attendance of the witnesses can be procured; but, as we construe it, he intends only to depose, in the alternative, that he can procure either their personal attendance or their depositions for the next term. If he knew when he made the affidavit that he could *not* procure their personal attendance, but believed in good faith that he could obtain their depositions for the next term, he could not have been convicted of perjury on this affidavit. But if the

affidavit had stated explicitly his belief that he could procure their personal attendance at the next term, it would still have been insufficient, unless the reasons for his belief had been set forth to enable the Court to decide whether his belief was well founded; or, if he acted on the information of others, he should have stated the nature and particulars of the information. In applications for continuance, "the allegation that a party has used all the diligence in his power is not sufficient. It should be shown to the Court, of what such diligence consisted—whether by exhausting the process of the Court, or otherwise." (*People* v. *Thompson*, 4 Cal. 238.) For the same reason, if a party states, on information and belief, that he can procure the personal attendance of a witness from a distant foreign country, he should set forth the reasons for his belief, and the nature of his information, that the Court may decide whether or not there is reasonable ground to believe that the witness will attend. If continuances could be procured on such affidavits as this, the delays in the administration of justice would soon become intolerable. Whilst great liberality should be extended toward persons charged with crime, in preparing the defense, and particularly in procuring the attendance of witnesses, the rule must not be so relaxed as to defeat the ends of justice.

On the trial there was some evidence by the witness, Goodwin, tending to show mental aberration on the part of the defendant shortly before the time of the homicide; and the defendant moved the Court to charge the jury as follows, to wit:

*First*—"If you believe from the testimony that the defendant was affected with insanity at the time of his conversation with Goodwin, at Sawpit Flat, then the presumption of law is that such insanity continued until the contrary is shown."

*Second*—"Insanity once shown to exist is presumed to continue until the contrary is shown. Therefore, if the defendant has shown that he was insane at any time before the act of killing, you will presume that he was insane at the time of killing, unless the contrary is shown."

If the term "insanity," as employed in these instructions, is to be construed as referring to a general unsoundness of the mind, and not to an aberration of a temporary nature, proceeding from some transient cause, then the instructions correctly stated the law. If it be shown that the intellectual faculties were so impaired as to produce a general, habitual derangement of them, not traceable to some temporary cause, the law would presume the mind to have continued in the same condition until the contrary was shown. (*People* v. *Farrell*, 31 Cal. 581; 1 Greenleaf on Ev. Sec. 42.) In Wharton's Criminal Law (Sec. 55), the rule is thus stated: "When habitual insanity is proved to have existed prior to the commission of an act, it will be presumed to have continued, unless the contrary be proved, down to the specific time. It is otherwise, however, when the proof is of temporary or spasmodic mania."

This presumption would have no application to a temporary insanity, resulting from some transient cause. If a person be proved to have had, on a particular occasion, a paroxysm of *mania a potu*, or delirium caused by fever, or by sudden and severe mental agony, there would be no presumption that the same state of mind continued after the exciting cause was removed. On the contrary, the presumption would be that the mind was restored to its normal condition when the disturbing element had ceased to operate.

The instructions which were refused do not recognize this distinction. On the contrary, the Court was requested to declare the law to be, that if the defendant was affected with insanity at the time of his conversation with Goodwin, the presumption is it continued until the contrary is shown; and that insanity once shown to exist, is presumed to exist until the contrary is shown. The vice of these instructions is, that they state the proposition too broadly. As we have shown, *every* species of insanity is *not* presumed to continue until the contrary is shown, but only a general habitual insanity, not proceeding from a transient cause; and if the instructions had been properly qualified in this respect, they ought to have been given. But in the form in which they were offered they were properly refused. Counsel insists,

however, that even though the abstract proposition of law be too broadly stated, the instructions must be construed with reference to the proofs; and that whatever proof of insanity there was, was of a general insanity, if any, and consequently the instructions must be interpreted as referring to the only species of insanity of which there was any proof. The only witness who testified as to the mental condition of the defendant was Goodwin, who states that, before he had any acquaintance with the defendant, he saw him on one occasion, when, from his appearance and manner, the witness concluded he must be laboring under considerable mental depression; he looked abstracted and careworn. But on this occasion he had no conversation with him. Several months later the defendant sought an interview with the witness, during which he stated that a short time before he had been a member of the Grand Jury, and felt that he had not done his duty as a Grand Juror, and was very unhappy about it; but did not state in what respect he had failed in his duty. From his conversation and manner the witness concluded that his mind was unsound. Nothing further occurred until after the defendant was arrested for the offense with which he was charged in the indictment in this case. After his arrest he applied to the witness, as an attorney, to defend him. In the first, and several subsequent conversations between them, he insisted he had done nothing wrong in killing Oliver; treated the subject with levity; said he could not understand why he should be confined in jail, when he had done nothing wrong; spoke of it as a little difficulty he had gotten into, from which he expected soon to be relieved and did not appear to be conscious that he had committed any wrong. From these circumstances, the witness concluded, his mind was generally unsound. It was for the jury to weigh the reasons given by the witness for his opinion. It may be that the appearance and manner of the defendant, in these several interviews, indicated an aberration of intellect; but we confess we are unable to discover in the other facts detailed by the witness any evidence of insanity. The fact that a man betrays uneasiness at having avowedly failed to perform his sworn

duty as a juror can scarcely be deemed evidence of insanity; and if a person who commits a crime is to be deemed insane because he afterward treats the subject with levity and insists he has done no wrong, it is quite plain the most hardened criminals would escape punishment by means of the very indifference which they exhibit to the enormity of the offense. In our view of Goodwin's testimony, the only fact which he discloses tending to show insanity, was the peculiar manner of the defendant; and whether this indicated a settled insanity, if any, or was the result of a temporary aberration, it was for the jury to decide on all the evidence in the cause. The evidence of insanity was certainly very meagre, and in order to have authorized the giving of the instructions which were refused, there ought at least to have been some evidence tending to show a settled general insanity, as contradistinguished from a mere temporary aberration or hallucination.

The other point made by the appellant, we do not deem of sufficient importance to require comment. On the whole, we think the case was fairly tried, and the judgment should stand. If the defendant shall hereafter exhibit evidences of insanity, his case will doubtless receive proper consideration at the hands of the Executive; but, on the proofs at the trial, we do not perceive how the verdict could have been otherwise than it was.

Judgment affirmed.

SPRAGUE, J., expressed no opinion.