| 61 | 629 |
| 81 | 606 |
| 61 | 629 |
| 102 | 667 |
| 103 | 10 |
| 61 | 629 |
| 104 | 252 |
| 61 | 629 |
| 112 | 200 |
| 61 | 629 |
| 124 | 212 |
| 61 | 629 |
| f126 | 71 |
| 61 | 629 |
| 135 | 723 |

PRESENT:

ɪON. JAMES G. DAY. CHIEF JUSTICE.
" JAMES H. ROTHROCK,
" JOSEPH M. BECK,
" AUSTIN ADAMS,    } JUDGES.
" WILLIAM H. SEEVERS,

---

## STATE v. WELLS ET AL.

1. **Criminal Practice:** CONTINUANCE ON ACCOUNT OF POPULAR PREJU-
   DICE: COUNTER AFFIDAVITS BY STATE. Where in a criminal case the
   defendant makes an application for a continuance on account of popular
   excitement and prejudice, under section 2749 of the Code, which pro-
   vides that a continuance may be granted "for any cause which satisfies
   the court that substantial justice will thereby be more nearly obtained,"
   and supports his application by affidavits, the application is addressed
   to the discretion of the court, and the court may properly allow the state
   in such case to file counter affidavits.

State v. Wells et al.

2. **Murder by Administration of Poison:** PRESUMPTION OF MALICE.
Where poison is administered unlawfully, and without any good inten-
tion, and death ensues, the law will presume that the killing was inten-
tional and voluntary and with malice aforethought, and it will be mur-
der in the first degree. So *held* in this case, when defendants, who were
prisoners in the state penitentiary, for the purpose of making their es-
cape, administered chloroform to one of the guards, whereof he died.

*Appeal from Lee District Court.*

TUESDAY, OCTOBER 16.

INDICTMENT FOR MURDER. Wells and Cook were found
guilty of murder in the first degree, and Fitzgerald in the
second degree. The defendants appeal.

*Casey & Casey*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

SEEVERS, J.—I. The defendants applied for a continu-
ance on the ground of excitement and prejudice existing
against them in the county where the indictment
was pending, which would prevent them from
having a fair trial. The application was based
on affidavits of the defendants, stating at length
the existence of the excitement and prejudice,
and the facts upon which their belief was based. These
affidavits were supported by the affidavits of five citizens of
the county, including defendants' attorneys. Objections
were filed to the continuance, but the same were overruled,
and "thereupon, and on its own motion, and against the objec-
tions of the defendant's counsel, the court allowed the attor-
neys for the state to file counter affidavits as to the condition
of public sentiment, excitement and prejudice, if any, against
the defendants." There was filed by the state the affidavits
of sixty residents of the county contradictory to those filed
by the defendants. A motion to strike the counter affidavits
from the files was overruled. When a motion for a continu-
ance is filed, supported by an affidavit of the party, on the

1 CRIMINAL
practice : con-
tinuance on
account of
popular pre-
judice : coun-
ter affidavits
by state.

ground of the absence of a material witness, such affidavit is not traversible, but is presumed to be true. *State v. Bowers*, 17 Iowa, 48; *State v. Scott*, 44 Id., 93; *State v. Dakin*, 52 Id., 395. In such case, the statute declares what must be stated in the affidavit, and, this done, the continuance follows as of course, if the court is satisfied that the statute has been complied with. Code, § 2750. The application before us is not based on the section of the Code referred to but upon § 2749, which provides that a continuance may be granted " for any cause which satisfies the court that substantial justice will thereby be more nearly obtained." Under this section, there is a judicial discretion reposed in the court, which, when exercised, will not be reversed unless such discretion has been abused. We are not aware that it has ever been held that counter affidavits could not be filed when an application for a continuance has been made which is addressed to the discretion of the court to the end that "justice will thereby be more nearly obtained." The statute does not require an affidavit to be filed in support of the motion, and in what way the court is to be informed that justice will be more nearly obtained by granting the continuance, is left to the discretion of the court. We are not required to determine whether counter affidavits can be filed in every case where the application is addressed to the discretion of the court, but only whether this can be done under the circumstances in the case before us. When there is excitement and prejudice against a defendant in a criminal case in a county where the indictment is pending, he may obtain a change of venue to some other county. In such case, the existence of the prejudice must be verified by three disinterested residents of the county, in addition to the defendant, and the court may receive additional " testimony by affidavits only, either on the part of the defendant or the state." Code, § § 4369, 4370, 4372.

It will be seen that the statute authorizes counter affidavits to be filed by the state. We think the same rule should

apply when a continuance is asked for the same reason. We have examined the affidavits, and are not prepared to say that the court abused its discretion in overruling the motion for continuance. When a crime is alleged to have been committed which excites public attention, there will always be some excitement or prejudice, possibly, in relation thereto; that is, as to the crime. There exists in all peaceable communities a prejudice against crime. To an extent, this extends to the person charged with the commission of the crime, but there is not usually a prejudice against him as an individual, but only because of the crime. It is impossible, we apprehend, to obtain an entirely indifferent jury. All that can be done is to approximate thereto as nearly as can be done, having due regard to the prompt administration of justice. We are impressed by the affidavits before us that the defendants would receive as fair and impartial a trial at the term they were tried as at any subsequent term. The fair trial contemplated means such a trial both for the state and the defendants. The whole ground should be looked over, and continuance granted only where the court is satisfied that "substantial justice will thereby be more nearly obtained."

II. The indictment, in substance, charged that the murder was perpetrated by the administration of chloroform, a

2 MURDER by administration of poison: presumption of malice.

poison. The evidence tended to show that the defendants were confined in the penitentiary, and that they administered chloroform to the deceased, one of the guards, and then made their escape. They were recaptured in a few days thereafter. The court gave the jury the following instructions:

"10. In cases of homicide, malice may be legitimately inferred from the means used and the manner of its use; and if the killing is with a dangerous and deadly poison, unlawfully administered, and it is not shown to have been given with a good intention, the presumption will be that the killing was intentional and voluntary, and with malice aforethought.

"12. If the crime is perpetrated by means of poison, knowingly and feloniously administered, it will be murder in the first degree, and premeditation and deliberation will be presumed, and these elements of the crime of murder need not be proved; and it is the established law that to commit murder by means of poison is a deliberate act necessarily implying malice.

"15. If you shall find that chloroform is a dangerous and deadly poison,.and that the defendants were confined in the state penitentiary * * * ; that to effect an escape from said penitentiary they administered to the said John Elder * * * chloroform in quantities sufficient to ordinarily produce death, and from the poisonous effects of which the said John Elder died, and .you so find beyond a reasonable doubt, you should find the defendants guilty of the crime of murder in the first degree, but if you do not so find, acquit of this degree."

Counsel for the defendants insist that the foregoing instructions are erroneous, because, as they claim, under the statute, there may be a homicide caused by the administration of poison, and yet the perpetrator not necessarily be guilty of murder. The argument is that " the intention in giving the poison may not have been a good one; yet it does not follow that it was the intention to kill Elder; on the contrary, when we reach that point, we will demonstrate the fact, gathered from the evidence, that no such intention was contemplated." It is further insisted that, in order to constitute murder, the poison must have been administered with the specific intention to kill, and if administered merely with the intent of escaping from the penitentiary, then the defendants are not guilty of murder. It is provided by statute as follows:

"Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder.

"All murder which is perpetrated by means of poison, or lying in wait, or by any other kind of willful, deliberate and

premeditated killing, or which is committed in the perpetration or attempt to perpetrate any arson, rape, robbery, mayhem or burglary, is murder in the first degree and shall be punished with death or imprisonment for life * * * as determined by the jury.

"Whoever commits murder otherwise than is set forth in the preceding section, is guilty of murder in the second degree * * * ." Code, § § 3848, 3849, 3850.

It has been held under similar statutes that, where murder is committed in the perpetration of rape or robbery, it is not essential that there should be established that there was a specific intent to kill. It is sufficient if death ensues from violence inflicted when the defendant is engaged in the commission of the offenses named. *State v. Pike*, 49 N. H., 399; *Buel v. The People*, 78 N. Y., 492; *Moynihan v. The State*, 70 Ind., 126; and this has been substantially ruled in *State v. Weese*, 53 Iowa, 92. Counsel for the defendants do not, as we understand, controvert the rule established in the foregoing cases. They say it was not the intent of the statute to create a new offense, but merely to grade the punishment of the crime of murder. That is to say—if murder is committed in a certain way, or rather while the perpetrator is engaged in the commission of a crime named in the statute, then the punishment is greater than if otherwise committed. Counsel also insist that the decisions above quoted are based on the thought, that a homicide committed while the perpetrator is engaged in the commission of the crimes named in the statute was murder at common law, and that a homicide caused by the administration of poison was not murder at common law, unless it was administered with an intent to kill. Therefore, it is said, there must be an intent to kill before one who administers poison to another, which causes death, is guilty of murder.

There is a statute in Indiana similar to ours, which was construed in *Bechtelheimer v. The State*, 54 Ind., 128. In this case poison was administered, which caused death, and,

as we understand, the court held, in substance, that the defendant was not guilty of murder, because there was no intention to kill.   This case is referred to in the subsequent case of *Moynihan v. The State*, before cited, but we cannot say that it is overruled or shaken as an authority thereby. The reason given for the ruling, however, is not in accord with the line of thought suggested by counsel.   The court say: "This construction is adopted not so much from the language employed, considered by itself, as from the results that would flow from a different construction.   If no purpose to kill is necessary to constitute murder where the killing is brought about by administering poison, then the most innocent act of one's life may turn out to be a murder, and that, too, in the first degree, subjecting him to the gallows or imprisonment for life.     *     *     *     By the innocent administration of poison, no penal law or moral turptitude is shown."   This reasoning is not entirely satisfactory, for the reason  that we are unable to see, if it is held that a specific intent to kill is not required, that it necessarily follows that a person who innocently administers the poison to another, and death ensues, is guilty of murder.   That is, if an overdose of the poison is given, or it is administered by mistake and causes death, the person making the mistake is guilty of murder.   We are not prepared to say that such a construction of the statute should be adopted, and no such question is before us.   The court instructed the jury that the poison must have been "unlawfully administered" and not "given with a good intention."   If the jury so found, then the presumption was that the "killing was intentional and voluntary, and with malice aforethought."   That is to say, under the circumstances stated, an intent to kill should be presumed, and we think this is the correct construction of the statute.   Under this instruction, a person could not be convicted of murder who innocently or with a good motive, lawfully administered poison to another, which caused death. We have no occasion now to determine what the rule would

be where poison is carelessly and negligently administered. We, however, desire to call attention to the fact that our statute and that of Connecticut are substantially alike, and it was held in *The State v. Dowd*, 19 Conn., 388, that a person could be lawfully convicted of murder in the second degree who had administered poison to another which caused death.

The statute provides, "Whoever kills any human being with malice aforethought, either express or implied, is guilty of murder. If the killing "is perpetrated by means of poison, or any other willful, deliberate, and premeditated killing," then it is murder in the first degree. It seems to us that the meaning of the statute is that the administration of the poison constitutes the required deliberation and premeditation, and evinces an intent to kill, provided it is "unlawfully" administered, and "without a good intention." That is to say, that the administration of the poison unlawfully, with a bad motive or intent, under the statute constitutes murder, if death ensues, and that it is immaterial whether or not there is a specific intent to kill. It is fundamental that every one is presumed to intend the necessary consequences of an act deliberately done by him.

We are unable to draw a distinction between a homicide which occurs during the perpetration of a robbery, and when the homicide is caused by the administration of poison. Both, under the statute, must be deemed murder. If it is unnecessary to prove malice, or an intent to kill, in one case, why not in the other? A person engaged in robbery, when he strikes the fatal blow, may not intend to kill, but may, and probably does, strike the blow the more readily to effect his escape. Still he is guilty of murder. So, in the case before us, it may be conceded that the object in the administration of the poison was to enable the defendants to escape from the penitentiary, still they are guilty of murder, because the poison was unlawfully administered, and thereby deliberation and premeditation sufficiently appear, and an intent to

kill is presumed. If they had beaten the deceased and effected their escape, they might not have been guilty of murder, because no such consequence is by the statute attached to the beating as there is to the administration of poison. The instructions of the court under consideration, we think, are correct. As to whether chloroform is poisonous or not was left to the jury. The evidence supports the verdict. We discover no error. The judgment is, therefore,

AFFIRMED.