[Crim. No. 42.   Filed December 29, 1887.]

[S. C. 15 Pac. 673.]

THE TERRITORY OF ARIZONA, Plaintiff and Respondent, v. SOL. BARTH, Appellant.

1. GRAND JURY—IMPANELING—EXCUSING JUROR—PRESUMPTION IN AB-

SENCE OF FACTS ON APPEAL THAT COURT ACTED PROPERLY—COMP. LAWS ARIZ. 1877, p. 120, par. 590, and p. 121, par. 592, CITED.— Where a juror was excused by the trial court, in the absence of the facts, this court will presume that the court acted properly. Statutes cited, *supra.*

2. CHANGE OF VENUE—PROPERLY REFUSED—COMP. LAWS ARIZ. 1877, p. 131, par. 699 AND p. 132, par. 701 CITED.—Where an application for change of venue, made on the ground that a fair and impartial trial could not be had in the county, supported by four affidavits, was resisted by a showing of fourteen affidavits denying the existence of prejudice against the defendant, the application was properly refused. Statutes cited, *supra.*

3. TRIAL—CONTINUANCE—GRANTING DISCRETIONARY—WILL BE RE-VIEWED FOR ABUSE—ABSENCE OF WITNESSES—AFFIDAVIT MUST SHOW THE FACTS PROPOSED TO BE PROVEN CLEARLY, THAT THEY ARE MATERIAL AND WHERE A WITNESS IS TO BE CONTRADICTED THAT HIS TESTIMONY IS FALSE.—Granting of continuance is discretionary with the trial court. For abuse of discretion error may be assigned, and the cause reversed. The showing for continuance on account of absence of witnesses must clearly state the facts which defendant expects to prove by said absent witnesses and such facts must be made to appear material. If it is expected to contradict anticipated testimony then the fact that such testimony is false should be stated. (Territory v. Barth, 319.)

4. FORGERY—EVIDENCE—TESTIMONY OF ACCOMPLICE—COMP. LAWS ARIZ. Ap. 137, par. 757, CITED—CORROBORATIONS—PRINCIPAL AND ACCES-SORY.—Evidence of forgery in raising amount of county warrant reviewed and held sufficient. Where principal witness was an accomplice, and statute, *supra,* requires corroboration, evidence that defendant indorsed the warrant, received the money for the same, and made false enteries in his books concerning it, is complete. In forgery he is the principal who directs the false writing to be made for his use, and utters the forged instrument.

5. CRIMINAL LAW—INSTRUCTIONS TO JURORS—DEGREE OF CERTAINTY IN PROOF.—Proof of guilt to a moral certainty is not required in a criminal case.

APPEAL from a Judgment of the District Court of the Third Judicial District in and for the County of Yavapai. Affirmed.

The facts are stated in the opinion.

Howard, Herndon & Hawkins, and E. M. Sanford, for Appellant.

Briggs Goodrich, Atty. Gen., for Respondent.

BARNES, J.—This was an indictment against defendant, Solomon Barth, accusing him of the crime of forgery of a county warrant, with a count for uttering said forged warrant. Defendant urges as error the refusal of the court to quash the indictment for irregularity in the formation of the grand jury. Defendant was present at the time the grand jury was impaneled, and given an opportunity for challenge, which he declined to accept, on the ground that he had not been held to bail for this offense, and was under no accusation. Leaving the question whether he has waived his right of challenge, we will consider the alleged irregularity. Section 176, Comp. Laws, c. 11, provides for an order summoning 24 persons, to serve as a grand jury which order was made in this case, and the sheriff returned 24 persons served, and they all appeared. Section 178 provides that the names of persons in attendance be written on separate ballots, and put in a box, from which the grand jury shall be drawn, which was done; but the court of its own motion excused the sixth person whose name was drawn, and this is the error assigned. It does not appear for what reason this juror was excused. To know whether the excuse was justified or not the facts should be made to appear. We must assume, in the absence of the facts upon which the court acted, that the court acted for good reason, and not arbitrarily. Suppose the juror had been deaf and dumb, blind, intoxicated, or for any other reason disabled from jury service, no one can doubt for a moment the power and duty of the court to excuse the juror. The court should excuse a juror for any apparent disqualification, and we must assume that the court acted properly. Having excused this juror 23 persons remained, the number the law provides to constitute a grand jury, and it was organized with those persons. In this it does not appear that the court erred.

It is urged that the court erred in refusing to grant a

change of venue. Application was made on the ground that
"a fair and impartial trial" could not be had in the county.
Comp. Laws, 699. The statute provides that, if the court
"is satisfied that the representation is true," the venue may
be changed. Id. 687. The plaintiff filed his own affidavit,
and affidavits of three others, of facts tending to show that
such a prejudice existed against defendant in the county
to such an extent as would prevent a fair trial. This was
met by the affidavits of 14 persons living in different parts
of the county denying the existence of such prejudice. The
defendant was simply overwhelmed by the evidence, and
the court very properly refused the change.

Error is assigned in the refusal of the court to grant a
continuance. This is a motion addressed to the sound dis-
cretion of the court, and for the abuse of such discretion
error may be assigned, and the cause reversed. *Territory* v.
*Davis,* Ante p. — 10 Pac. 359; *People* v. *Francisc,* 38 Cal. 183.
We do not think there was such an abuse of discretion in this
case as requires a reversal. It does not appear clearly that
the testimony of the witnesses Lee, Eoff, and Bibo could be
procured at a time to which the case could be postponed.
But the fatal error to this showing is that the facts which
defendant expected to prove by the witnesses are not clearly
stated, nor are they made to appear to be material. In the
main they suggest that they will contradict or discredit a
witness named Silvers. It is true that an emergency might
arise in the trial in which such testimony would be compe-
tent. For all that appears in the affidavit, Silvers would
admit every fact expected to be proved, and in that case
the evidence would be incompetent. Besides, the affidavit
nowhere states that the testimony of the witness Silvers,
which the affidavit anticipates, is untrue. If true, the pro-
posed evidence would avail nothing. The witness Silvers
might be filled with prejudice; might have been hired to re-
main in the jurisdiction of the court for the purpose of be-
ing a witness; might have even threatened to put defendant
in Yuma, and yet his testimony be true. This the defendant
should have negatived, and shown to the court that the pro-
posed testimony was material to meet *false testimony* of the
witness. By the witness Eoff he expected to prove that the

said writing was "not uttered and forged as true," as alleged. This is a conclusion of both law and fact. The facts should have been stated. We think the court did not err in refusing to continue the case. We will not review all the errors assigned. The demurrer was properly overruled. The indictment sufficiently alleges a forgery of this instrument, and in the second count the uttering of an alleged instrument knowing it to be false and forged.

The evidence shows that a general county warrant was issued to Patterson & Co. for lumber, for $91.24, signed by Luther Martin, chairman of the board, and Charles Kinnear, clerk of the board; that J. B. Patterson, one of the company, took the warrant to defendant's store, and handed it to Harry Silvers, defendant's clerk. He had spoken to defendant about it, who told him he was giving 80 cents on the dollar for county warrants. Silvers gave a check for 80 per cent of the amount of the warrant. The check was signed by defendant.

The alleged warrant was offered in evidence, and was for $190, and was the same warrant delivered to Silvers by Patterson. Silvers testified that defendant told him that he expected a warrant from Patterson, and told him to pay 80 cents on the dollar for it, and signed a check in blank to pay for it with. Silvers put the warrant in the safe with other warrants. A few days after defendant asked Silvers for all the warrants, which were given to defendant, and he shortly returned with them, and Silvers noticed this to be for $191, instead of $91, and called defendant's attention to it, who told him to keep his mouth shut. At defendant's direction, this warrant with others were sent to a bank at Prescott for discount. Defendant indorsed the warrant. The alterations were made in the handwriting of Kinnear. There was evidence of several other warrants altered in the same way, discounted at the same time. It is urged that the witness Silvers is an accomplice, and that his testimony is not corroborated. Comp. Laws, 344. We think the corroboration is complete. The defendant indorsed the warrant; received the money for the same; false entries appeared in his books as to it; in fact, the whole case together demonstrates that defendant was engaged in a conspiracy to buy and raise warrants. He had corrupted the clerk of the board to aid him, and give the

appearance of genuineness to the county warrants. He had induced his book-keeper, Silvers, to aid him under his direction. He was the prime mover, the chief actor, the arch-conspirator, the principal, in this criminal transaction. The writing was not in his hand, but it was by his direction, and is as much his act as if he had written the words himself. He is not an accessory in any sense. An indictment which alleges that defendant forged, is proved by evidence that the false writing is made by his direction, and for his use, and followed by proof that he uttered the forged instrument. He was the principal offender. The whole case evinces an amount of turpitude and criminal intention that is appalling. How the jury could have been led to have recommended him to the mercy of the court we cannot understand. His guilt was made clear by the evidence. Of that there can be no doubt, and the evidence upon which this conclusion rests is both competent and convincing. Such an infamous conspiracy, as is here shown, having as one of its actors a trusted officer of the county, and its purpose the wholsesale robbery of the funds of the county, should be met with sure and swift punishment. And it is well that the principal actor, a man of wealth, power and influence, a merchant of many years, as this record discloses, should be the first convicted, rather than visit the blame upon his mere instruments, the clerk of the board and his own book-keeper.

After a careful examination of the whole case, we see no such error as warrants a reversal of the case. The instructions as a whole, submit the case fairly to the jury. We will notice but one objection to the charge. The court instructed the jury that the law presumes defendant to be innocent "until such strong proof of his guilt of the offense charged shall be adduced as to remove every reasonable doubt of his guilt. A reasonable doubt, however, means a substantial doubt, arising from the evidence, and not a mere possibility of the defendant's innocence. If, upon the whole case, the jury entertain a reasonable doubt of the defendant's guilt, they should acquit;" and refused to instruct that "by reasonable doubt is meant that the state of the case which leaves the mind of the jury in that condition that they cannot say they feel an abiding conviction, to a *moral certainty*, of the

truth of the charge;'' and that ''the evidence must establish the truth of the charge to a reasonable and moral certainty.'' We think the court was correct in the charge. There is nothing more difficult than to attempt to make clear what is meant by the reasonable doubt that will warrant an acquittal. The words themselves perhaps convey the idea as accurately as a paraphrase can do. To say that proof to a moral certainty is required, is misleading. Whatever may be the meaning of those words to scholastics, to a common mind it requires a much higher degree of proof than is necessary in a criminal case. To require proof to a moral certainty would make it impossible to enforce the criminal law. In a civil cause, a mere preponderance of evidence governs the verdict; in a criminal case, the mind of the jury must be convinced of the truth of the charge. That is all. To be convinced means that the evidence must be such that the reason sees no doubt left of the defendant's guilt. The law does not deal with doubts that the imagination may conjure up. The mind may not run outside the evidence in search for doubts; the reason must detect and point them out in the evidence alone, and direct the mind to stop short of being convinced. When the mind so hesitates from conviction, there exists a reasonable doubt. If the mind, on the other hand, rests satisfied and convinced, all reasonable doubt is removed. It is that condition of mind as leads reasonable men in the important affairs of life to act with confidence and not to pause and hesitate and say ''I am not satisfied,'' after a consideration of all the facts bearing upon the proposition. Ordinary men can and do understand this; but to ask for a moral certainty startles the mind with doubt and uncertainty which may not be removed by any evidence, however convincing to the reason. Such is not the demand of the law. *Commonwealth* v. *Costley,* 118 Mass. 1; *State* v. *Reed,* 62 Me. 162; *People* v. *Guidici,* 100 N. Y. 403; *Arnold* v. *State,* 23 Ind. 170; *Miles* v. *United States,* 103 U. S. 304; *People* v. *Finley,* 38 Mich. 482; *Maguire* v. *People,* 44 Mich. 286, 38 Am. Rep. 265, 6 N. W. 669; *State* v. *Bridges,* 29 Kan. 138; *Massey* v. *State,* 1 Tex. App. 564; *Densmore* v. *State,* 67 Ind. 306, 33 Am. Rep. 96; *Batten* v. *State,* 80 Ind. 394; *Holmes* v. *State,* 9 Tex. App. 313; *State* v. *Rover,* 11 Nev. 348; *Mixon* v. *State,* 55

Miss. 527; *Myers* v. *Commonwealth,* 83 Pa. St. 142; *Anderson* v. *State,* 41 Wis.   And see *People* v. *Ah Sing,* 51 Cal. 372; Judge Shaw in *Commonwealth* v. *Webster,* 5 Cush. 320, 52 Am. Dec. 711; *Allen* v. *Fox,* 10 Amer. Law Rep. 642; 3 Greenl. Ev. § 29, and note; Starkie, Ev. 507.

The judgment of the district court is affirmed.

Wright, C. J., concurs.

PORTER, J.—I concur; and on the question of reasonable doubt will add that explanations of reasonable doubt confuse more than they make clear.   In *Miles* v. *United States, supra.,* the court says: "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury."