[Criminal No. 252.   Filed March 20, 1909.]

[100 Pac. 443.]

## LOUIS V. EYTINGE, Defendant and Appellant, v. TERRITORY OF ARIZONA, Respondent.

1. CRIMINAL LAW—APPEAL—REFUSAL OF CONTINUANCE—DISCRETION—REVIEW.—The granting or withholding of a continuance rests in the sound discretion of the trial court, and its action thereon will not be reversed on appeal unless it is manifest that the discretion has been abused.

2. CRIMINAL LAW — CONTINUANCE — APPLICATION — VERIFICATION OF FACTS—INFORMATION—BELIEF.—It is not an abuse of discretion to deny accused a continuance, where all the material facts on the basis of which the continuance is sought are averred on information and belief without setting forth the sources of the information.

3. AFFIDAVITS—SUFFICIENCY OF AVERMENTS.—To demand consideration in any judicial proceeding, an affidavit must be traversable, and lay the foundation for a charge of perjury if false.

4. JURY—EXAMINATION OF JURORS.—While the trial court must allow reasonable latitude in the examination of jurors beyond those ques-

tions which tend to lay a foundation for challenge for cause, to enable accused to intelligently exercise his peremptory challenges, the court has discretion to restrict the extent of such inquiry to prevent delay.

5. CRIMINAL LAW—APPEAL—EXAMINATION OF JURORS—DISCRETION.— In the absence of an abuse of discretion, the refusal of the trial court to permit certain questions to be asked of jurors on their *voir dire* is not ground for reversal, though the questions are pertinent.

6. CRIMINAL LAW—APPEAL—PREJUDICE.—In a prosecution for homicide, defendant was not permitted to ask six jurors on their *voir dire* whether each one had a belief as to whether decedent was killed or not. Two of the six were excused for cause, and the remaining four were examined by accused with sufficient elaboration to exclude any basis for reasonable contention that failure to have such specific question answered was prejudicial to him. *Held,* that the exclusion of the question was not ground for reversal.

7. HOMICIDE—"MURDER"—DEGREES—STATUTES—"OTHER"—MURDER, BY POISON—"IMPLIED MALICE"—"EXPRESS MALICE."—Penal Code of 1901, .section 172, declares that "murder" is the unlawful killing of a human being with malice aforethought. Such malice is express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature, and is implied where no considerable provocation appears, or where the circumstances attending the killing show an abandoned and malignant heart. Section 173 declares that all murder perpetrated by poison or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, or mayhem, is murder in the first degree, and all other kinds of murder are in the second degree. *Held,* that the word "other" in section 173 was used to supply the sense of addition to the enumeration; and hence an instruction that it was not essential to a verdict of murder in the first degree by poison that there should be proof that defendant administered the poison to decedent with a specific intent to kill him was proper, malice being implied.

8. HOMICIDE—STATUTES—"MURDER."—Penal Code of 1901, section 173, provides that all "murder" which is perpetrated by means of poison or lying in wait or by any other kind of willful, deliberate, or premeditated killing, or which is committed in the perpetration of certain offenses, shall be murder in the first degree, and all other kinds of murder are in the second degree. *Held,* that such section does not prescribe that all "killing" perpetrated by means of poison is murder in the first degree, but that all "murder" so perpetrated is so; the word "murder" being there used to denote all that is covered in the definition of that word in section 172, defining murder as the unlawful killing of a human being with malice aforethought, etc.

9. HOMICIDE—INSTRUCTIONS—ELEMENTS · OF OFFENSE.—Where an instruction directed that a conviction could be had only on proof of malice, it was not obnoxious to the suggestion that it failed to authorize an acquittal if the killing was excusable, or as authorizing a conviction of murder on evidence which would support a conviction of manslaughter only.

APPEAL from a judgment of the District Court of the Third Judicial District, in and for the County of Maricopa. Edward Kent, Judge. Affirmed.

### STATEMENT OF THE CASE.

The appellant was indicted by the grand jury of Maricopa County on the twenty-third day of April, 1907. This indictment charges him with murder in the first degree and is in two counts, each of which charges the appellant with the murder of John Leitch on or about the seventeenth day of March, 1907. The first count charges that the appellant unlawfully, feloniously and with malice aforethought gave and administered chloroform and certain other poison, to the grand jury unknown, to John Leitch with the unlawful intent to kill him. The second count charges that appellant unlawfully, feloniously and with premeditated and deliberate malice aforethought killed and murdered John Leitch by some way and manner and by some instrument and weapon and by some poison to the grand jury unknown. The indictment is substantially the formula adopted in *Westmoreland* v. *United States,* 155 U. S. 545, 15 Sup. Ct. 243, 39 L. Ed. 255, and *Edmonds* v. *State,* 34 Ark. 720. The questions involved are as follows: The denial of an application for a continuance made on behalf of defendant; errors in the selection of jurors; errors in the admission and rejection of testimony; errors in giving and refusing instructions to the jury and failure of the evidence to establish the *corpus delicti.*

A. C. Baker, and Alfred Franklin, for Appellant.

The denial of the application for a continuance and forcing the applicant to trial under the circumstances in this case set out deprived him of a great right. *Claxton* v. *Commonwealth* (Ky.), 30 S. W. 998; *Ryder* v. *States,* 100 Ga. 528, 62 Am. St. Rep. 334, 28 S. E. 246, 38 L. R. A. 721. The court erred in the selection of jurors. It was incumbent upon the

prosecution to prove that the death of the deceased was caused by poison administered by the appellant. It is not necessary to disqualify a juror that he should have a judgment or opinion upon a consideration of all the circumstances involved in the case. It is sufficient for his disqualification that his obnoxious opinion attaches to any one material fact involved. Thompson and Merriman on Juries, sec. 217; *Stewart* v. *State,* 13 Ark. 720; *Davis* v. *Walker,* 60 Ill. 452; *Watson* v. *Whitner,* 23 Cal. 376; *People* v. *Carsoy,* 57 Cal. 102; *State* v. *Mann,* 83 Mo. 589; *Donovan* v. *People,* 139 Ill. 418; *Bayse* v. *State,* 45 Neb. 261, 63 N. W. 811.

Experiments before a jury are often allowed in both civil and criminal cases, but on account of the misconception and error liable to occur from their use, it is essential that the circumstances and conditions be similar as those which the experiment is designed to illustrate. *Chicago etc. R. R. Co.* v. *Champion,* 9 Ind. App. 510, 53 Am. St. Rep. 357, 36 N. E. 221, 37 N. E. 21; 12 Am. & Eng. Ency. of Law, 406. If the conditions are dissimilar, evidence of experiments are inadmissible. *Tesney* v. *State,* 77 Ala. 33; *Commonwealth* v. *Piper,* 120 Mass. 185.

In all those cases where they are admissible, the experiments must be made with the same means. *State* v. *Justus,* 11 Or. 178, 50 Am. Rep. 470, 8 Pac. 337; *Petteway* v. *State,* 36 Tex. Cr. 97, 35 S. W. 646. Where deceased's skull was broken with a poker, experiment with a similar poker but a different skull, to show facility, etc., was rejected. *Commonwealth* v. *Twitchell,* 1 Brewst. 566.

"All murder, which is perpetrated by means of poison or lying in wait or by any other kind of willful, deliberate and premeditated killing or which is committed in the perpetration of or an attempt to perpetrate arson, rape, robbery, burglary or mayhem is murder of the first degree and all other kinds of murder are murder of the second degree." Pen. Code, sec. 173. The point of the matter is this, whether or not there was malice aforethought or premeditation and deliberation in either one of the instances becomes a question of fact and not a presumption of law. In *State* v. *Phinney,* 13 Idaho, 307, 89 Pac. 634, the court also added: "The jury might conclude that the death was caused by means of poison and yet be satisfied that it was without malice aforethought."

*People* v. *Milton,* 145 Cal. 169, 78 Pac. 549; 21 Ency. of Law, 167; *State* v. *Phinney,* 13 Idaho, 307, 89 Pac. 634, 12 L. R. A., N. S., 935; McClain on Criminal Law, sec. 359; *State* v. *King,* 24 Utah, 482, 91 Am. St. Rep. 808, 68 Pac. 418; *State* v. *Daly,* 210 Mo. 664, 109 S. W. 53.

It is unquestionably true that proof of the prisoner's guilt of another crime than that for which he is being tried cannot be put in evidence unless it be in exceptional cases, to show scienter or animo, or a connected plan or scheme. 1 Green-leaf on Evidence, 4th ed., sec. 52; Kerr on Homicide, sec. 469; *Hawes* v. *People,* 129 Ill. 521, 16 Am. St. Rep. 283, 21 N. E. 777, 4 L. R. A. 582; 12 Cyc. 405; *People* v. *Molineaux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193.

The jury are the judges of the facts and must be left to weigh the evidence without any rules from the court, which will compel them to indulge a presumption of fact whether under all the circumstances they think they ought to indulge it or not. *Allison* v. *State,* 42 Ind. 354; *Stone* v. *Geyser Quicksilver Min. Co.,* 52 Cal. 315, 1 Morr. Min. Rep. 59.

E. S. Clark, Attorney General, for the Territory.

The matter of granting or denying a motion for continuance is wholly discretionary. *Halderman* v. *Territory,* 7 Ariz. 120, 60 Am. St. Rep. 876, and cases cited.

The court was right in sustaining an objection to the question "Have you now any belief or opinion as to whether John Leicht was killed." The opinion of the juror in order to disqualify him must be upon the merits, that is, whether the prisoner is guilty or not guilty of the offense charged, and not upon some one particular fact or feature of the case; thus, in cases of homicide, it has been held that a juror who has formed the opinion that the defendant did the killing is not incompetent if he has not formed an opinion as to whether the defendant was guilty or innocent of crime in the act of killing. *State* v. *Thompson,* 9 Iowa, 190; *Lowenberg* v. *People,* 27 N. Y. 342; *State* v. *Sorter,* 52 Kan. 531, 34 Pac. 1036; *Cargen* v. *People,* 39 Mich. 549; *State* v. *Weems,* 96 Iowa, 426, 65 N. W. 387.

"If the crime is perpetrated by means of poison, knowingly and feloniously administered, it will be murder in the first degree, and premeditation and deliberation will be presumed,

and these elements of the crime of murder need not be proved; and it is the established law that to commit murder by means of poison is a deliberate act, necessarily implying malice." *State* v. *Wells,* 61 Iowa, 629, 47 Am. Rep. 822, 17 N. W. 90; *State* v. *Thomas,* 135 Iowa, 717, 109 N. W. 900; *State* v. *Van Tassell,* 103 Iowa, 6, 72 N. W. 497; *State* v. *Bertoch,* 112 Iowa, 195, 83 N. W. 967.

NAVE, J.—The appellant was convicted of murder in the first degree, and has appealed from the judgment and sentence upon such conviction. Of the several assignments of error but three require our consideration.

1. Prior to his trial appellant applied for a continuance; his application being supported by the affidavit of his two attorneys "that they have been informed and verily believe" several different facts which would have a tendency to prove the defendant to be insane; likewise, "that they have been informed and verily believe" that several physicians in Ohio, giving their names and addresses, will testify to these facts, and testify that appellant is insane and has been insane for several years, and that a continuance is necessary for the purpose of obtaining the testimony of these witnesses. A continuance was refused. The granting or withholding of a continuance rests in the sound discretion of the trial court. Its action in refusing it will not be the basis for a reversal of the judgment unless it is manifest that the discretion has been abused. *Elias* v. *Territory,* 9 Ariz. 1, 76 Pac. 605; *Halderman* v. *Territory,* 7 Ariz. 126, 60 Pac. 876; *Territory* v. *Dooley,* 3 Ariz. 60, 78 Pac. 138; *Territory* v. *Barth,* 2 Ariz. 322, 15 Pac. 673. It cannot with propriety be held to be an abuse of discretion to deny a continuance where all of the material facts upon the basis of which the continuance is sought are averred upon information and belief without setting forth the source of the information. To demand consideration in any judicial proceeding, an affidavit must be traversable, and thereby must lay the foundation for a charge of perjury if false. The affidavit in this case was deficient in this essential. *Comstock* v. *Nebraska,* 14 Neb. 205, 15 N. W. 355; *People* v. *Francis,* 38 Cal. 183; *State* v. *Wilson,* 9 Wash. 218, 37 Pac. 424; *State* v. *Carroll,* 13 N. D. 383, 101 N. W. 317; *Turner* v. *Commonwealth,* 25 Ky. Law Rep.

2161, 80 S. W. 197; *State* v. *Crane,* 202 Mo. 54, 100 S. W. 422; *Bradley* v. *State,* 128 Ga. 120, 57 S. E. 237; *Brown* v. *State,* 23 Tex. 195.

2. Upon the examination of the jurors upon their *voir dire,* the court sustained objections made by the territory to the following question asked of several of them: "Have you any belief now as to whether John Leitch [with whose murder appellant was charged] was killed or not?" This question, directed to elicit the jurors' opinion as to an isolated feature of the case, not being aimed directly at the state of their minds with reference to the defendant's guilt, would tend only remotely to lay a foundation for challenges for cause. Wherefore the refusal to permit the question to be answered could not operate to deprive the appellant of his privilege of laying a foundation for a challenge for cause by questions, more closely directed. 24 Cyc. 291. On the other hand, it is clear that the answers to this question might have value to appellant in the exercise of his peremptory challenges. The trial court must allow reasonable latitude in the examination of jurors beyond those questions which tend to lay a foundation for challenge for cause to enable the defendant to acquaint himself with facts upon which he may base peremptory challenges. Yet discretion must be lodged with the trial court to restrict the extent of such inquiry; otherwise the time of the court may be occupied to the unjust delay of a crowded calendar, as in fact it notoriously often is, by much extended examinations of jurors which in the end prove fruitless, and at the time do not promise serviceable disclosures. In the absence of an abuse of this discretion, the refusal of the trial court to permit certain questions to be asked of jurors on their *voir dire* should not be the basis for a reversal, even though the questions are pertinent. An examination of the record discloses that of the six jurors of whom the appellant was not allowed to ask this question two were excused for cause, while the remaining four were examined by the appellant with sufficient elaboration to exclude any basis for a reasonable contention that failure to have this specific question answered was prejudicial to him. Under these circumstances, the discretion of the trial court to restrict the extent of the examination was not abused.

3. The other point which we shall consider has to do with the instructions to the jury. The contention as to these instructions hinges upon the interpretation to be given to our statutes defining the different degrees of homicide. These statutes (Pen. Code 1901) are as follows:

"Sec. 172. Murder is the unlawful killing of human being with malice aforethought. Such malice is expressed or implied. It is expressed when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied where no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.

"Sec. 173. All murder which is perpetrated by means of poison or lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary, or mayhem, is murder of the first degree, and all other kinds of murder are of the second degree."

"Sec. 176. Manslaughter is the unlawful killing of a human being without malice. It is of two kinds:

"(1) Voluntary—upon a sudden quarrel or heat of passion.

"(2) Involuntary—in the commission of an unlawful act not amounting to felony; or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection."

The appellant was convicted of the murder of the decedent by administering poison to him.

The court instructed the jury: "I am asked by the defendant to instruct you that, before you can convict, you must be satisfied beyond all reasonable doubt that the defendant administered chloroform or chloral hydrate to John Leicht with the specific intent to kill him. I do not so charge you. It is not necessary, in order that you should find a conviction in this case, that you should find he administered the poison with the specific intent to kill him. As I have told you, all murder which is perpetrated by means of poison is murder in the first degree. Now, the code does not say all killing which is perpetrated by means of poison, but it says 'all murder,' and murder is the unlawful killing of a human being with malice aforethought. Now, malice is of

two kinds. It is expressed or implied. It is expressed where
there is manifested a deliberate intention unlawfully to take
away the life of a fellow creature. So that, before you can
find that this defendant murdered this man Leicht with mal-
ice aforethought and that that malice was expressed, you
would have to find that he had the specific intent to kill him,
because malice is expressed when there is manifested a de-
liberate intention unlawfully to take away the life of a fel-
low creature. So to that extent you would have to find he
had the specific intent to kill him before you could find that
he killed him with expressed malice. But malice is also im-
plied. It is implied where no considerable provocation ap-
pears, or where the circumstances attending the killing show
an abandoned and malignant heart. So that, under this
indictment, you can find him guilty of murder in the first
degree without finding that he had the specific intent to kill
him, if you find that he had that implied malice—that is,
where no considerable provocation appeared, or where the
circumstances attending the killing show an abandoned and
malignant heart.'' The argument of the appellant is some-
what confusing, but no more so than are decisions of the
courts upon the point involved. In one breath appellant
concedes that the meaning of section 173, *supra,* is that mur-
der which is perpetrated by means of poison is murder of
the first degree, contending that the instruction misled the
jury by failing to disclose that a homicide by use of poison
might be manslaughter or entirely excusable, while in the
next breath he appears to contend that murder by means of
poison is murder of the second degree, unless it is shown to
be a willful, deliberate, and premeditated killing. These
two features of the argument fairly disclose the problem pre-
sented. In another aspect the problem may be stated as
being whether a killing by means of poison is murder of the
first or of the second degree where the malice is implied only;
that is, where the circumstances attending the killing show
an abandoned or malignant heart, but where there is not
manifested a deliberate intention to take life. Several of the
cases which are cited by appellant and respondent fall short
of service in this case by reason of the absence from the stat-
utes interpreted of the word ''other'' which appears in our
section 173. In a final analysis, it is readily discovered that

the entire difficulty devolves upon the use of the word "other." What is its implication? Does it indicate the legislative conception that a killing with malice aforethought by means of a poison or lying in wait is essentially and as a conclusion of fact a willful, deliberate, and premeditated killing (*State* v. *Wells,* 61 Iowa, 629, 47 Am. Rep. 822, 17 N. W. 90; *State* v. *Baldwin,* 36 Kan. 1, 12 Pac. 318, 328), or does it imply that a killing by means of poison or lying in wait shall be murder of the first degree only when the killing is shown to be willful, deliberate, and premeditated (*State* v. *Dowd,* 19 Conn. 391; *Bechtelheimer* v. *State,* 54 Ind. 128), or does it imply neither of these, but does it mean that other in the sense of additional circumstances under which murder shall be of the first degree are when the killing is willful, deliberate, and premeditated? That is to say, is the word "other" here used inexactly to supply the sense of addition in the enumeration of the varieties of murder of the first degree? The difficulties of interpretation imposed upon courts where the legislative use of the word "other" is confusing are extensively shown in the footnote in 29 Cyc., page 1533 et seq., together with the varying conclusions which have been reached in the numerous instances of the use of the word there collected. It would not be profitable to enter into a refined analysis of this section of our statutes or an extended statement of the different reasons in favor of or against the alternative interpretations above suggested, or into a review of the considerations which have prompted other courts in reaching their various conclusions. We reject the first alternative because it obliterates the distinction made in section 172 between express and implied malice in application to a homicide by poison or lying in wait, and would seem to create in such a homicide in lieu of implied malice what must be denominated an implied expressed malice, where a deliberate intention to take human life is not actually manifested, yet the circumstances show an abandoned and malignant heart fatally bent on mischief. The placing of deadly poison with fatal consequence in a cistern of drinking water, done with a malignant and reckless desire to injure, yet not with a specific intent to kill, is an illustration which may be drawn from the statutes of some states. As to the second alternative, we content ourselves with pointing out that an impli-

cation that a killing by means of poison must be shown to have been a willful, deliberate, and premeditated killing—that is to say, a killing with expressed malice, instead of with implied malice—renders the words "by means of poison" both meaningless and purposeless; for proof that the murder was willfully, deliberately, and premeditatedly accomplished would prove it to be murder of the first degree, irrespective of the means employed. Under such an interpretation, the use of poison to accomplish murder is not distinguished from the use of any other means. We believe it to have been the legislative intent to establish a difference between poison as an instrument of murder and other instruments, and to define murder by poison as murder of the first degree, whether committed with expressed or implied malice. We are relegated to the adoption of the third alternative, to wit, that "other" is awkwardly used to supply the sense of addition to the enumeration. That murder by means of poison is always murder of the first degree is in harmony with expressions of the supreme court of California both before and after we adopted these statutes from the statutes of that state, in cases, however, wherein the precise point was not called in question. *People* v. *Nichol,* 34 Cal. 211; *People* v. *Sanchez,* 24 Cal. 17; *People* v. *Milton,* 145 Cal. 169, 78 Pac. 549.

It must not be assumed, however, that we overlook the fact that an unlawful homicide may be committed by poison without malice. Section 173 has no bearing upon the proof of malice, and does not serve to detract from the proof of malice as imposed by the provisions of section 172. If the homicide is without malice, but is nevertheless unjustifiable and inexcusable, the grade of the homicide is manslaughter. It is to be observed that in the statutes which we have quoted there is a discrimination in the use of the words "killing" and "murder." Section 173 does not prescribe that all "killing" which is perpetrated by means of poison is murder of the first degree, but that all "murder" so perpetrated is such. The word "murder" there used denotes all that is covered in the definition of the word in section 172. It leaves room for the classification of an inexcusable, unjustifiable homicide without malice as manslaughter, even though committed by poison. Examining the instruction in the light of this dissertation, it becomes manifest that it is not obnoxious to

the law. Its effect was to point out to the jury that it was not essential to the verdict of murder in the first degree that there should be in the record proof that appellant administered poison to Leicht with the specific intent to kill him. That specific intent being disclosed, the malice would be expressed; and to have instructed the jury not to return a verdict of guilty of murder in the first degree except upon proof of the specific intent to kill would have been to eliminate from their consideration, as supporting a conviction of murder in the first degree, those facts which tend to prove that the killing was brought about by poison, administered under circumstances showing an abandoned and malignant heart, which circumstances imply malice. Furthermore, the instruction directed that a conviction could be had only upon proof of malice. Hence it is not obnoxious to the suggestion that it failed to leave room for an acquittal, if the killing were excusable, or that it made it possible that there should be a conviction of murder on evidence which would support a conviction of manslaughter only. Portions of the instructions which we have not quoted supplemented that which is quoted, and adequately and fairly presented the case to the jury.

The judgment of the district court is affirmed.

SLOAN, DOAN, and CAMPBELL, JJ., concur.